PETER GARGUILO ET AL. *v.* JUDSON J. MOORE ET AL.

ALCORN, HOUSE, COTTER, THIM and RYAN, Js.

Argued March 6—decided April 16, 1968

*Richard L. Reilly,* for the appellants (defendants).

*Richard S. Levin* and *Harold A. Bochino,* for the appellees (plaintiffs).

COTTER, J. The plaintiffs brought this action for damages, alleging a breach of the defendants' agreement to perform "the agreements and items of work" as set forth in a judgment. The judgment referred to was rendered, without any adjudication of the issues, in November, 1959, by the Court of Common Pleas by agreement of the parties in fulfilment of a stipulation entered into by the parties to the present action and by others not involved in the present proceedings. The defendants have appealed to this court from an award of damages to the plaintiffs by the Superior Court.

The portion of the 1959 judgment pertinent to this appeal provided that the defendants herein "shall have the following work performed in a competent, workman-like manner by a competent contractor selected by the plaintiffs and agreed to by said defendants; said work to be performed within a reasonable time and as soon as practicable, and said work to include the following: a. Install berm or curbing as needed on Brook Lane in the area of the culvert adjoining the property of the defendant, Wilmott, and in front of the property of the defendant, Crosby, for the purpose of diverting the normal

flow of surface street water; b. Dredge the plaintiffs' pond of silt and other material brought down by the brook on the plaintiffs' property to a maximum depth of five and one-half feet; . . . e. Construct no more than three masonry water retainers or dams in the plaintiffs' brook, to be six inches above the mean water level, between Brook Lane and the plaintiffs' pond, and suitable provision shall be made in connection therewith for proper spillways for the normal flow of water; all in accordance with good engineering practice."

The essence of the judgment rendered by the Court of Common Pleas conforming to the stipulation of the parties was that the parties to the litigation voluntarily entered into an agreement ostensibly setting their dispute or disputes at rest. *Bryan v. Reynolds,* 143 Conn. 456, 460, 123 A.2d 192.

The present cause of action is for damages which, in effect, is an action to enforce the terms of the judgment. Although an action on a judgment is not favored as being generally vexatious and oppressive, the weight of authority is to the effect that an allegation of nonpayment is sufficient reason for instituting suit. *Denison* v. *Williams,* 4 Conn. 402, 404; *Mandelbaum* v. *Gregovich,* 24 Nev. 154, 160, 161, 162, 50 P. 849; 50 C.J.S., Judgments, § 849, p. 422, § 859 (a), p. 432. "[T]he obligation arising from a domestic judgment enforceable in our courts, differs materially from any ordinary obligation arising from the acts of the parties, whether *ex contractu* or *quasi ex contractu." Fisher, Brown & Co.* v. *Fielding,* 67 Conn. 91, 121, 34 A. 714 (dissenting opinion).

The basic facts necessary to a disposition of the questions involved may be summarized as follows: Pursuant to the judgment the plaintiffs consulted

various contractors and submitted bids received from them to the defendants for the work to be done in accordance with it as follows: North Haven Construction Company, Inc., $10,275; The Velleca Construction Corporation, $9125; Randall Construction Company, Inc., $11,750; Roma Construction Company, $8455. The defendants at no time agreed to have any of the contractors whose names and estimates were submitted to the defendants do the work proposed. The work was never done. Thereafter, when the defendants had been summoned to appear before the Court of Common Pleas in response to an application for an order to show cause why they should not be held in contempt of court for failing to carry out the terms of the judgment, the attorneys for the parties entered into a conference at the courthouse. After the conference, the attorneys for the defendants presented an estimate to the plaintiffs for work to be done on the basis "that it would be about $2,000 or less." The plaintiffs rejected this estimate because they did not feel that the work stipulated to and required to be done by the judgment could be done for the figure presented to them.

Although the judgment only required that in choosing a contractor the plaintiffs select one who is competent, they nevertheless submitted estimates from four contractors for the approval of the defendants. Much of the matter contained in the finding and briefs relates to the reasonableness of the so-called bids from the four contractors so selected. The word "competent" in the sense which it is used in the judgment means that a contractor must be capable or qualified or that he possess the knowledge, skill, experience and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he

is employed to do. Webster, Third New International Dictionary; Restatement (Second), 2 Torts § 411, comment (a). The work required to be performed, of course, must conform to the terms set forth in the judgment itself. There was a great deal of evidence before the trial court in this regard in the form of exhibits and testimony from officers of the various construction companies who had submitted estimates as well as from other experts in this particular field. A wide range of evidence was presented to the court by all the parties bearing on all of the aspects of the work to be performed.

The trial court found and concluded, inter alia, that the estimates of The North Haven Construction Company, Inc., The Velleca Construction Corporation, and The Roma Construction Company were all reasonable in the light of what each company proposed to do under its respective bid; that the work proposed to be done was reasonably necessary to comply with the terms of the judgment of the Court of Common Pleas; that each company was a reliable and reputable contractor; and that the difference in prices between each of these bids received by the plaintiffs was not unusual since a bid is generally made on intangibles and is the result of the personal consideration of the various items involved by the person making the estimate.

The defendants claim that an interpretation of paragraphs (a), (b) and (e) of the judgment did not require them to (1) instal more than seventy-five feet of berm or curbing, (2) dredge the pond to a depth in excess of five and one-half feet, or (3) clean out the brook.

The parties were at all times in substantial disagreement as to the work to be performed and the total amount to be paid for the work to be done

under the terms of the judgment. The amount of damages had not been liquidated. Basically, the judgment adopted the agreement of the parties that the defendants were to perform work for the plaintiffs, and it set forth the description of the work agreed upon. Difficulty arises in the case because of the uniqueness and lack of clarity of the stipulation. It failed to accomplish what was intended, viz., to put an end to litigation. On the contrary, it, in effect, was an invitation to further litigation, as evidenced by the long drawn out proceedings culminating in an appeal to this court. The defendants did not become specifically bound in money damages because the judgment of the Court of Common Pleas lacked finality in character and because it was not susceptible of immediate enforcement.

As long as the judgment was in effect the plaintiffs could seek process to enforce it. See *Christmas* v. *Russell,* 72 U.S. (5 Wall.) 290, 305, 18 L. Ed. 475. "What the judgment is in any case can be determined only by considering the whole record." *Gould* v. *Hayes,* 71 Conn. 86, 93, 40 A. 930; *Tolman* v. *McLay,* 114 Conn. 98, 101, 157 A. 647. Usually, a record in a judicial proceeding is "a precise history of the suit from its commencement to its termination, including the conclusion of law therein, drawn by the proper officer for the purpose of perpetuating the exact state of facts." *Smith* v. *Jewell,* 71 Conn. 473, 476, 42 A. 657. "A judgment upon which a suit is to be predicated must be a final and complete thing, upon which execution might have issued for its enforcement." *Cothren* v. *Olmsted,* 57 Conn. 329, 332, 18 A. 254.[1] Since the judgment of the Court of

[1] No question of unreasonable delay in asking for relief has been raised so that the issue of failure to take prompter action to enforce the judgment is not before us. See *Weil* v. *Poulsen,* 142 Conn. 213, 217, 112 A.2d 890.

Common Pleas was based on the stipulation of the parties, there is no record before us.

A resolution of the issues raised in this action necessarily required the trial court to interpret the terms of the judgment to which the parties consented. See *United States* v. *Atlantic Refining Co.,* 360 U.S. 19, 23, 79 S. Ct. 944, 3 L. Ed. 2d 1054. It was necessary to inquire into the meaning and scope of the provisions contained in that judgment. *Bock* v. *Meriden Trust & Safe Deposit Co.,* 135 Conn. 94, 98, 99, 60 A.2d 918; see *Harrison* v. *Union & New Haven Trust Co.,* 147 Conn. 435, 439, 162 A.2d 182. The interpretation by the court of the work to be performed in accordance with its ultimate assessment of damages was correctly determined, and there was abundant evidence to support the court's finding and conclusion that the estimate of C. W. Blakeslee and Sons, Inc., was reasonable. This estimate was offered by the plaintiffs at the time of trial through the witness Norman Picard, a project engineer for C. W. Blakeslee and Sons, Inc., and was adopted by the court in assessing damages. The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. *Christiano* v. *Christiano,* 131 Conn. 589, 592, 41 A.2d 779.

In its interpretation of paragraph (a), the court concluded that the judgment did not specify any minimum or maximum of linear feet for the berm or curbing on Brook Lane, and the length which was needed as called for by the judgment was a question of fact for the trier to determine. This was correct since the court was compelled to determine, in view of the conflict in language, what was a reasonable course to take under all the circumstances. Paragraph (a) of the judgment stated that the berm or

curbing was to be installed "as needed" and "for the purpose of diverting the normal flow of surface street water." Although there was conflicting evidence on this issue, there was testimony by an engineer that 300 feet of curbing were needed to meet the requirements of paragraph (a) of the judgment since the purpose stated is to divert the normal flow of surface street water.

The court construed paragraph (b) of the judgment to mean that the plaintiffs' pond was to be dredged to an average depth of five and one-half feet because some of the contractors testified that in certain places they would dredge to a depth of from seven to eight feet but that on the overall the average depth would be five and one-half feet. The evidence and testimony from competent witnesses to the contrary, however, the judgment specifically stated "dredge . . . to a maximum depth of five and one-half feet." The court was incorrect in this interpretation since the word "maximum" as used herein, under the circumstances, cannot be interpreted to mean average.[2]

The claim of the defendants that cleaning out of a brook was not required under paragraph (e) of the judgment is without merit since a reasonable interpretation of the judgment contemplated such a procedure and since there was abundant evidence for the court to find and conclude that this work was necessary for the normal flow of water under the terms of the judgment and was in accordance with good engineering practice.

---

[2] This interpretation did not affect the correctness of the ultimate decision of the court since, in awarding damages, the court accepted the opinion of Norman Picard of C. W. Blakeslee and Sons, Inc., and found in that connection upon conflicting evidence that "Blakeslee proposed to dredge the existing pond to a depth of five and one-half feet."

After a full trial on all the issues, the court concluded and rendered judgment that the plaintiffs were entitled to damages of $8141. The court heard Norman Picard, a project engineer for C. W. Blakeslee and Sons, Inc., who testified in detail as to the total amount of work contemplated, the manner in which, in his opinion, it should be performed and the cost chargeable to each item for work and materials. The court "took as the criterion the Blakeslee estimate of 1966" in that amount.

Basically, it is the claim of the defendants that the plaintiffs did not submit any bid to the defendants which corresponded with the work to be done under the stipulation for judgment in the Court of Common Pleas; that the estimate of C. W. Blakeslee and Sons, Inc., "did not correspond with the aforesaid stipulation in that it included the dredging of a pond to a depth from seven to eight feet when the stipulation required dredging to a depth of five and one-half feet"; and that a bid of D. V. Frione and Company, Inc., of $2185 submitted by the defendants in response to a letter from one of the plaintiffs' former attorneys was improperly rejected by the plaintiffs.

The judgment of the Court of Common Pleas determined that the work should be performed by the defendants. There was evidence upon which the court could properly find and conclude, as it did, that the contractors selected by the plaintiffs to do the work were competent contractors. The defendants did not at any time, however, consult with any one of them in an effort to perform its agreement. Since the parties could not agree and since the plaintiffs proceeded to enforce the judgment by asking for damages, the court acted properly in determining a reasonable amount in damages from all the

evidence presented. The court was free to accept the testimony of Picard in arriving at the determination it made. Although the defendants claim Picard testified his estimate included dredging to an average depth of five and one-half feet with a depth of seven and one-half feet in the middle, there was testimony by him that his company "would have it five and one-half feet in the middle, approximately, as much as we could assume that it was five and one-half feet, and then it would be saucered out to the side." The court could consider all the evidence and determine what the reasonable amount in damages should be.

Upon the evidence, the court acted properly in deciding that the plaintiffs need not accept the vague, ambiguous and, what appeared to be, unreasonable estimate offered by the defendants, which, incidentally, was not contemplated in the terms of the judgment upon which the plaintiffs brought suit.

An assessment of damages was required by the court in the present case since the amount of the judgment upon which this action was brought was unliquidated and because the judgment was not definitive so as to be conclusive upon the parties and so as to terminate the litigation. The nature and amount of the work to be done was in controversy. The rights of the parties were not settled by the judgment, and it was ambiguous and uncertain, required legal interpretation, and was silent as to the amount of recovery. See *Grant* v. *Phoenix Mutual Life Ins. Co.*, 106 U.S. 429, 1 S. Ct. 414, 27 L. Ed. 237; note, 55 A.L.R.2d 723.

The judgment of the Court of Common Pleas was sadly defective in its lack of specificity. "A judgment of the nature of the one here attempted should be so precise and definite in its terms that the parties

may clearly understand what acts are to be done by them on the one side and the other, and how their rights are determined." *Goldberg* v. *Krayeske,* 102 Conn. 137, 144, 128 A. 27. A trial of the issues was necessary in order to define the terms of the judgment upon which action was brought and to determine the precise and specific rights and obligations of the parties. Upon all the evidence before it, the court did not act improperly in adopting the estimate of Norman Picard of C. W. Blakeslee and Sons, Inc., as the measure of damages and then in assessing damages in that amount as of the time of trial.

There is no error.

In this opinion ALCORN, THIM and RYAN, Js., concurred; HOUSE, J., concurred in the result.