DAVID D. NAUSS, TRUSTEE, ET AL. *v.* ALEXANDER H. PINKES, HEALTH DIRECTOR

BARBARA ESPOSITO, TRUSTEE *v.* JOHN W. PHILLIPS ET AL.
(2302)
(2878)

HULL, DUPONT and BORDEN, Js.

Argued April 17—decision released August 14, 1984

*James T. Brennan,* for the appellant (successor plaintiff in the first case, plaintiff in the second case).

*Gail S. Kotowski,* with whom, on the brief, were *Edmund L. Pantani* and *Philip N. Costello, Jr.,* for the appellee (defendant in the first case).

*Philip N. Costello, Jr.,* for the appellees (defendants in the second case).

HULL, J. These two cases, which were tried separately, were combined on appeal[1] since both arise from the same factual matrix.

The underlying facts are undisputed. In the spring of 1971, David D. Nauss as trustee, the Old 79 Realty Co., Inc., and Brookside Realty, Inc.,[2] sought a special exception permit from the planning and zoning commission of the town of Madison for the construction of twenty-four multiple-family garden apartment units on a parcel of land located at 100 Bradley Road in Madison. On April 1, 1971, the commission denied the application for a special exception on the sole ground that the applicants had not received requisite written approval of the proposed sewage disposal system from the town health director, physician Alexander H. Pinkes, the defendant in the first action, who had refused to issue such a writing.

On April 13, 1971, Nauss instituted a suit against Pinkes seeking a writ of mandamus ordering him to issue a written statement approving the plaintiffs' sewage disposal facilities at the proposed garden apartments site. On June 10, 1971, at the time of trial before *Dannehy, J.,* the parties entered into an oral stipulation which was approved by and made a judgment of the court.

---

[1] These appeals, originally filed in the Supreme Court, were transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] Hereinafter, except when otherwise specified, a reference to Nauss is a reference to Nauss and the two realty companies.

At the hearing, the town acted through its town counsel who was authorized to enter into the agreement with Nauss on behalf of the town and its health director. Pinkes was also present. The judgment rendered pursuant to the stipulation provided as follows:

"That the Defendant issue a writing approving the subsurface sewage disposal systems of the Plaintiffs in accordance with Section 4.1.6.1.9 of the Planning and Zoning Regulations of the Town of Madison in accordance with the plans previously filed with the Planning and Zoning Commission of said Town of Madison;

"That prior to October 10, 1971, the Plaintiffs, their agents, successors or assigns shall not cause any excavation of the earth on the premises shown on said plans, but prior to said date of October 10, 1971, may remove trees, brush, shrubs; stockpile or store fill on said premises; grade said premises; and remove or demolish an existing dwelling house shown on the plans as submitted, all in a manner so as not to interfere with the pond or waters thereof as shown on said plans;

"That the Defendant or his successor in office or his agents may conduct baseline water tests of the waters of said pond on the premises of the Plaintiffs shown on the aforesaid plans prior to October 10, 1971."

During the four month period, tests were conducted under the supervision of Pinkes. On October 4, 1971, Pinkes resigned as health director of the town of Madison. Neither Pinkes nor any of his successors as health director ever issued the writing in accordance with the judgment of the court. No further effort was made by Nauss to obtain a special exception for the property.

Nauss' plans concerning the property appeared to be abandoned. In 1978, Nauss transferred the property to Barbara Esposito, as trustee for a group of four per-

sons. The transfer included an assignment of the judgment. Although Esposito did not thereafter make an application to the commission for a special exception, her representatives indicated frequently from the time of purchase that the owners wanted to get the approval letter so that they could proceed with the planned project. All other attempts at reviving the matter were rebuffed by the various town officials involved, on the basis of the advice of the town counsel that the owners would have to start all over again on such an application.

On January 30, 1981, Esposito filed with the court an application for enforcement of the Nauss judgment[3] and for the addition as a party defendant of Ross Sayers, a physician who was then health director of the town. Esposito sought to have Pinkes and Sayers held in contempt for failure to issue the written approval.[4]

At the same time as the application for enforcement of the 1971 *Nauss* judgment was brought, Esposito brought two other actions: (1) *Esposito* v. *Phillips,* which is the second case involved in this appeal; and (2) *Esposito* v. *Madison,* Superior Court in the judicial district of New Haven, No. 190242, which is a suit for damages against certain town officials arising out of the same factual background, and which is still pending in the Superior Court.

The case of *Nauss* v. *Pinkes* was heard by the court, *M. Hennessey, J.,* and a memorandum of decision was filed on October 27, 1981. The court held that the contempt order could only be predicated on the proposition that the act sought to be performed by the public official was ministerial in nature. The court concluded that this issue was not before the court in 1971 or in the case under consideration. Therefore, it found that

[3] Esposito sought to be substituted as a party plaintiff. On the record before us, there is no indication that this was acted on.

[4] No request was ever made to Sayers for such approval.

the present proceedings were not the appropriate forum to hear the *Nauss* complaint. The court denied the application for enforcement of the judgment and the application to name Sayers, the successor health director of the town, as a party defendant.

Esposito, in Nauss' name, appealed from the judgment of the court, claiming the single issue as to whether the assignee of the 1971 judgment against a public official, rendered on a stipulated judgment in a mandamus action, may enforce the judgment against the official's successor by an application for enforcement of the judgment in 1981. The plaintiffs claimed that a mandamus must be obeyed and that a judgment is enforceable for twenty years. The defendants claim that the judgment of June 21, 1971, is not a mandamus order; that if it is a mandamus order, it is unenforceable against a public officer who has a duty to exercise discretionary powers; and that enforcement of the 1971 judgment is barred by laches.

The case of *Esposito* v. *Phillips,* was brought by complaint dated January 29, 1981, and returnable March 3, 1981, seeking a mandamus requiring Phillips, the then first selectman of the town, and a host of other town officials, commissions and commissioners[5] to issue various permits, writings and rulings necessary for the construction of the garden apartment project. Paragraph two of the prayer for relief sought an order directing Ross Sayers, the health director, to issue the writing required by the 1971 judgment.[6] Paragraph

[5] In addition to Phillips, the individuals include four other selectmen of Madison, health director Ross Sayers, the town engineer, the town building inspector, the inland wetlands commission, the planning and zoning commission, the water pollution control board, the chairman of the inland wetlands commission, the chairman of the planning and zoning commission and the chairman of the water pollution control authority.

[6] No satisfactory reason was adduced at oral argument before this court as to why these two cases involving essentially the same issues, with some additional claims in this second action, were not tried together, thus avoiding two separate trials and two separate appeals.

three of the prayer for relief sought an order directing the planning and zoning commission to issue a special exemption permit in accordance with Nauss' 1971 submission. The defendants filed a special defense that the plaintiff and her predecessors had failed to exhaust their administrative remedies concerning the various permits and approvals requested, to which the plaintiff replied that it was unnecessary and would have been frivolous to make such applications since, she alleged, she had been advised by the town counsel that it would be necessary to "start from scratch."

The trial court, *Fracasse, J.,* filed its memorandum of decision on June 13, 1983. The court went over the same ground as the court in *Nauss* v. *Pinkes,* finding that no request for the written approval of the health director was ever made after the 1971 judgment, nor was any building permit requested. The court then expanded on the earlier decision and made the following additional pertinent findings: (1) there were no regulated inland wetlands in Madison in 1971, but a portion of the property is now mapped as inland wetlands; (2) in 1974, the inland wetlands commission started regulating certain activities including the deposit into and removal of material from mapped inland wetlands; (3) between June 10, 1971, and the transfer of title to Esposito in 1978, no one developed the property, the only work having been done being the removal of some trees and the attempted removal of a house from the property; (4) after June 10, 1971, the Nauss interests developed another piece of property instead of 100 Bradley Road; (5) the plaintiff, Esposito, claimed the right to develop the property in accordance with the earlier application for a special exception permit; (6) in September, 1979, the town notified an agent of Esposito that the predecessors had "abandoned their project and accordingly no permit was issued by [Planning]," that the court's judgment

of 1971 was "moot," and that Esposito "must start from scratch in connection with any proposed project involving approval of a proposed sanitary system since the conditions of the project may have changed."

In October, 1980, the town notified the agent of Esposito that "the zoning approval granted to the [predecessor] has long since lapsed under zoning regulations because they did not proceed with the project within the required two year period nor did they request any extensions of time . . . ."

Section 4.5 of the planning regulations has remained unchanged from the date of the application to the present, except that it is presently designated as § 4.6. It provides as follows: "*Lapse Provision.* Approval of the application shall mean approval conditioned upon completion of the proposed improvements in accordance with plans as approved within a period of two years after such approval is granted, and said approval and any permit issued shall become null and void in the event of failure to complete the proposed improvement in accordance with plans as approved within such two year period. One extension of such two year period, for an additional period not to exceed one year, may be granted by the Commission for sufficient cause shown."

The court denied each claim for relief, concluding as follows: (1) mandamus requires that the plaintiff have a clear legal right to the relief sought; (2) its allowance is governed by equitable principles; (3) mandamus will be denied where, by reason of events occurring subsequent to the commencement of the proceedings or because of lapse of time, the relief sought would be nugatory or unavailing; (4) Esposito failed to prove a clear legal right to any of the relief requested; (5) if the special exception permit was approved in 1971, the lapse provisions of the regulations rendered such approval null and void; (6) if the application for a spe-

cial exception was not approved, there is no right to have it enforced; (7) the 1971 judgment did not create a right to the special exception permit in Esposito and her predecessor exempt from the lapse provision and the general statutes and local regulations concerning planning; and (8) Esposito's predecessor failed to pursue his rights in a timely and reasonable manner.

Most significantly, the court finally concluded as follows: "Twelve years [have] elapsed since entry of said judgment. During said time new laws and regulations relating to waste disposal, inland wetlands and standards of construction have been enacted; state and municipal agencies have been created to apply and enforce said laws and regulations. Population, water needs and incidence of water pollution currently in the Town are some facts which municipal agencies may wish to consider in deciding whether or not to approve today an application for special exception permit to build garden apartments on the property.

"All claims to order the issuance of the approval of said application for special exception permit have been decided by said judgment of June 10, 1971. This action for writ of mandamus is not the remedy to enforce the writ of mandamus ordered in 1971. The issues presented in this action are academic."

The plaintiff, in her brief, claims that the trial court erred: (1) in failing to find a clear legal right to mandamus as to the various defendants; (2) in its application of the lapse regulations; (3) in concluding that later changes in the law made the 1971 judgment academic; and (4) in its refusal to hear evidence of the parties' intent in regard to the 1971 stipulation.

The defendant in this appeal relied on the trial court's finding of the lack of a clear legal right to mandamus and the rendering of the matter academic by changed regulations since the 1971 judgment.

I

## *NAUSS* v. *PINKES*

We conclude that the court was in error in two regards. First, the court erred in holding that the 1971 judgment left open the question of whether the requested writing was a ministerial or discretionary act. The stipulated judgment on its face was a consent judgment that an order in the nature of mandamus, although not so designated, be rendered against Pinkes. Thereafter, there was no question left in this regard. Second, the court was in error in not admitting Sayers as a necessary, and indeed indispensable, party. As Pinkes had lost the power to issue such a letter ten years earlier, Sayers was the only person at the time of the trial who was authorized to issue such a letter.

Since we conclude on both records that both cases are barred by the doctrine of laches, however, the court's errors in the case are harmless errors.[7]

In addition, the court's judgment should be sustained on the basis of mootness. The plaintiff, Esposito, conceded in her brief that "as to [the written approval] the trial court is practically correct since if the plaintiff does have to start all over in the permit process, then the writing approving of the 1971 plans is not of much practical significance since the project would almost certainly be redesigned because of the Inland Wetlands and Water Course Act."

---

[7] The trial court's judgment must be affirmed, although there was error, because the same result is required by law. See *A & H Corporation* v. *Bridgeport,* 180 Conn. 435, 443, 430 A.2d 25 (1980). It does not appear that laches was an issue specifically addressed at trial. Although, ordinarily, we will not consider issues not raised at trial; Practice Book § 3063; both parties in this case briefed the issue and it appears to us to be important controlling law dispositive of this appeal. See *Riccio* v. *Abate,* 176 Conn. 415, 418 n.1, 407 A.2d 1005 (1979); *Scott* v. *General Iron & Welding Co.,* 171 Conn. 132, 139, 368 A.2d 111 (1976).

## II

## *ESPOSITO* v. *PHILLIPS*

We find no error in the trial court's principal conclusions (1) that the plaintiff failed to prove a clear legal right to the relief sought; *McAllister* v. *Nichols,* 193 Conn. 168, 171, 474 A.2d 792 (1984); *Bahramian* v. *Papandrea,* 184 Conn. 1, 3, 440 A.2d 777 (1981); (2) that mandamus will be denied where, by reason of events occurring subsequent to the commencement of the proceedings, or because of lapse of time, the relief sought would be nugatory or unavailing; *Pape* v. *McKinney,* 170 Conn. 588, 595–96, 368 A.2d 28 (1976); (3) that if the special exception permit was approved de facto in 1971, it was barred by the lapse statute; (4) that if the special exception was not approved in 1971, there was no permit to be enforced in a mandamus action; (5) that the 1971 action created no rights in the owners exempting them from compliance with changed planning statutes and regulations; (6) that Nauss did not pursue his rights in a timely and reasonable manner; and (7) that changed conditions must be considered before such a permit may be granted twelve years later.[8]

## III

## LACHES AS A BAR TO ENFORCEMENT OF BOTH JUDGMENTS

We conclude that, on both records, laches is a bar to the relief sought in *Nauss* v. *Pinkes,* and is an additional basis on which the court's decision in *Esposito* v. *Phillips* should be sustained.

---

[8] We find error in the court's refusal to hear evidence of the circumstances surrounding the 1971 judgment. *Garguilo* v. *Moore,* 156 Conn. 359, 365, 242 A.2d 716 (1968). We find this, however, to be harmless error since the undisputed facts clearly establish that such an inquiry would not have benefitted Esposito.

"Laches consists of two elements. First, there must have been an inexcusable delay, and, second, that delay must have prejudiced the defendant. *Bozzi* v. *Bozzi,* 177 Conn. 232, 239, 413 A.2d 834 (1979); *Kurzatkowski* v. *Kurzatkowski,* 142 Conn. 680, 685, 116 A.2d 906 (1955); *Kievman* v. *Grevers,* 122 Conn. 406, 411, 189 A. 609 (1937). Moreover, the mere lapse of time does not constitute laches unless it results in prejudice to the defendant, that the defendant is led to change his position with respect to the matter in question. *Bozzi* v. *Bozzi,* supra." *Brock* v. *Cavanaugh,* 1 Conn. App. 138, 140, 468 A.2d 1242 (1984).

The Connecticut Supreme Court considered the question of laches in relation to enforcement of the judgment in *Weil* v. *Poulsen,* 142 Conn. 213, 112 A.2d 890 (1955). In that case, the plaintiff sought an injunction to require the defendant to make payments due under a separation agreement and also sought damages to collect on a money judgment rendered in 1935. In upholding the trial court's conclusion that the injunctive aspect of the case was barred by laches, the court stated: "It is true that at common law an action on a judgment may be maintained at any time within twenty years from the date of the judgment. *Barber* v. *International Co.,* 74 Conn. 652, 656, 51 A. 857 [1902]. The court's conclusion of laches, however, was directed primarily at the claim for injunctive relief. A conclusion that a delay of nearly fifteen years in asking for this type of relief constituted laches is not unreasonable, and therefore it is not erroneous." *Weil* v. *Poulsen,* supra, 217.

"The interpretation of a judgment may involve the circumstances surrounding the making of the judgment." *Garguilo* v. *Moore,* 156 Conn. 359, 365, 242 A.2d 716, citing *Christiano* v. *Christiano,* 131 Conn. 589, 592, 41 A.2d 779, (1945). In the unusual circum-

stances of this case, it is vital to consider on the record what the parties contemplated in the 1971 stipulated judgment.

Nauss filed the application for the special exception permit in 1970. On March 19, 1971, the commission wrote the developer that the matter had been tabled so that the developer could make seven suggested changes in the proposal. On April 1, 1971, the commission denied the plaintiffs' application on the sole ground that the approval of the local health director was not submitted pursuant to item three of the letter of March 19, 1971. At the time the stipulated judgment was rendered, all parties were adequately represented.

That all of the parties contemplated immediate issuance of the written approval is abundantly clear from the judgment itself. After ordering the defendant Pinkes to issue the writing, the judgment provided for a moratorium on excavation and interference with the pond on the property until October 10, 1971, so that Pinkes could conduct tests of the water in the pond. Were it not obviously the intent of the judgment that the letter be issued forthwith, there would be no need to provide for such a delay. Finally, any doubt in this regard is removed in a portion of the written stipulation of June 10, 1971, not included in the stipulated judgment, which provided that the plaintiffs "may apply for a building permit" for the construction of the apartments, subject again to the same moratorium.

It should be stressed that this is no ordinary judgment sought to be barred by laches. It is a specific agreement that a public official be ordered to perform a particular act. There must be read into the judgment the expectation that the act will be done within the time frame envisioned by the parties. In as dynamic and evolutionary a field of law and public policy as planning, zoning, and environmental concerns, regulations

and attitudes of the public and governmental officials are in a constant state of flux. The plaintiff in both cases has failed to breath life, Phoenix-like, into the 1971 judgment which had long been dead although not properly interred.

We find that under the circumstances there was an unreasonable delay in seeking to enforce the judgment.[9] This delay resulted in prejudice to all of the defendants in both cases since changed conditions and regulations make the enforcement of the judgment at this time impractical and inequitable.

There is no error on either appeal.

In this opinion the other judges concurred.

[9] The issuance of a mandamus is within the sound discretion of the court and inexcusable or inequitable delay may be a ground for refusing it. *Sullivan* v. *Morgan,* 155 Conn. 630, 635, 236 A.2d 906 (1967); *Silberman* v. *McLaughlin,* 129 Conn. 273, 278–79, 27 A.2d 634 (1942).