[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
PLAINTIFF'S MOTION TO STRIKE THE SPECIAL DEFENSES, SETOFF, AND COUNTERCLAIM OF THE DEFENDANTS THOMAS J. NICHOLAS AND LANTERN HILL ASSOCIATES [106]
The complaint here is for a foreclosure of a mortgage. CT Page 4305
The primary defendants named in the Complaint are Thomas J. Nicholas, Ellen C. Brown, and Lantern Hill Associates. Nicholas and Brown were the makers/mortgagors. Brown has not appeared; she was defaulted on July 6, 1998.
The defendants, Nicholas and Lantern Hill Associates filed an Answer which contained Five Special Defenses, a "Setoff," and "Counterclaims" in eleven counts. See Answer, Special Defenses, Setoff and Counterclaims, July 1, 1998. [104]
The Plaintiff has moved to strike all five Special Defenses, the Setoff, and all eleven counts of the Counterclaim. See Plaintiff's Motion to Strike the Special Defenses, Setoff and Counterclaim of the Defendants Thomas J. Nicholas and Lantern Hill Associates, July 30, 1998. [106]
On November 29, after oral argument on the Motion to Strike, plaintiff filed a First Amended Complaint, November ___, 1998. [109] On December 7, 1998, defendants Nicholas and Lantern Hill Associates filed an Answer To Amended Complaint, Special Defenses, Setoff, and Counterclaim, December 1, 1998. [110] That pleading does not contain the term "kitchen-sink!" The court decides the Motion To Strike as if and though it were directed to the Answer To Amended Complaint, Special Defenses, Setoff, and Counterclaim, December 1, 1998. [110]
Some background is necessary. On January 27, 1989, the defendants Nicholas and Brown owed the New London Federal Savings and Loan Association $206,000.00. They executed a note for that amount to the New London Federal Savings and Loan Association. To secure the loan, Nicholas and Brown mortgaged property known as 214 Lantern Hill Road. (a.k.a. 780 Lantern Hill Road), Ledyard, to the New London Federal Savings and Loan Association. First Amended Complaint, ¶¶ 1-3; Answer To Amended Complaint, Special Defenses, Setoff, and Counterclaims, ¶¶. 1, p. 1. [109 and 110]
New London Federal Savings and Loan Association changed its name to Coastal Savings Bank FSB in August 1989. Coastal Savings was later declared insolvent. Resolution Trust was appointed its Conservator. Resolution Trust Corporation, Conservator, was replaced by the Federal Deposit Insurance Corporation as Receiver on May 20, 1994. The FDIC assigned the note and mortgage to the plaintiff Federal Credit Management Corporation on February 16, 1996. First Amended Complaint, ¶¶. 4. [109] CT Page 4306
The note and mortgage are now owned by the Plaintiff, Franklin Credit. The note is in default because of the defendant's failure to pay the monthly installments due in May, 1991 and each and every month thereafter. First Amended Complaint, ¶¶ 5-6. [109]
Plaintiff has moved to strike all five special defenses, the setoff and all eleven counts of the counterclaim. The court addresses each.
 First Special Defense
In the First Special Defense, defendants Nicholas and Lantern Hill Associates (defendants) state "the debt subject of the lawsuit was discharged and released as evidenced by a Form 1099 issued by the Plaintiff's predecessor. . . ." Answer, Special Defenses, Setoff and Counterclaims, December 1, 1998, p. 2. [110] Hereinafter, that pleading will be referred to as "Answer To Amended Complaint, etc. [110]."
Plaintiff states the Form 1099 was attached to its brief as an exhibit. Defendants have objected to this. No copy of the Form 1099 was attached to the plaintiff's filed with the court. The court does not know the content of the Form 1099 which is central to defendants' position.
Plaintiff moves to strike on two grounds. Plaintiff claims a mortgage which passes through an FDIC receivership is not subject to any unwritten side agreements reached between the debtor and the FDIC's predecessor in interest. Plaintiff also claims defendant have only stated legal conclusions without the pleading the predicate facts to establish those legal conclusions.
Plaintiff apparently relies on the D'Oench Duhme doctrine derived from D'Oench Duhme Co. v. Federal Deposit Ins. Corp. ,315 U.S. 447 (1942), and the statutory version, 12 U.S.C. § 1823
(e)(1). In short, any agreement regarding the debt made by the insolvent bank and the debtor are a nullity unless certain requirements have been met. Plaintiff's Memorandum of Law In Support of Its Motion to Strike the Special Defenses, Setoff and Counterclaim of the Defendants Thomas J. Nicholas and Lantern Hill Associates, July 30, 1998, pp. 6-8. [106] The defendants have alleged a release and discharge by the plaintiff's predecessor. Coastal Savings, Resolution Trust Corporation, and CT Page 4307 the FDIC were plaintiff's predecessors. If, Coastal Savings had released and discharged the debt, perhaps plaintiff would be right. Borrowing from the Fourth Count of defendants' Counterclaims, defendants allege the Resolution Trust Corporation canceled the debt on or about April 14, 1995, and thereafter issued the Form 1099-C. Thus, the defendants do not rely on any agreement with the Coastal Savings Bank. Neither D'Oench Duhme or12 U.S.C. § 1823 (e)(1) avail plaintiff.
The plaintiff's claim that defendants have not plead the facts upon which the First Special Defense is based is also erroneous. The defendants allege: "The debt subject of the lawsuit was discharged and released. . . ." No more facts need be plead. Discharge and release must be plead as a special defense. Practice Book § 10-50.
The motion to strike the First Special Defense is denied.
 Second Special Defense
In the Second Special Defense, defendants allege plaintiff is estopped from proceeding on the note and mortgage. Defendant Nicholas relied on a Form 1099 issued by plaintiff's predecessor and reported debt forgiveness to state and federal tax authorities thereby incurring tax liability based on the discharge of the debt. Answer to Amended Complaint, etc., p. 2. [110]
Defendants seem to allege that the estoppel is tied to the issuance of a Form 1099 by plaintiff's predecessor, Resolution Trust Company. A Form 1099 must be issued by a financial institution if it cancels a debt of more than $600. The debtor to whom the Form 1099 is issued must report the amount of the canceled debt to the federal and state income tax authorities. The amount of the cancelled debt is treated as income. The debtor incurs an income tax liability on the amount of the debt cancelled.
Case law describes estoppel.
"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such CT Page 4308 conduct and has been led thereby to change his position for the worse." Brock v. Cavanaugh, 1 Conn. App. 138, 141, 468 A.2d 1242 (1984). Rapin v. Nettleton, 50 Conn. App. 640 (1998).
Defendants do not allege that Nicholas has paid any additional income taxes due to the alleged issuance of the Form 1099. Defendants only allege Nicholas "is therefore liable for additional taxes based on the discharge and release of the debt." Answer to Amended Complaint, etc., p. 2. [110] And, according to the defendants, the Form 1099 was issued by the Resolution Trust Corporation in April, 1995. Thus, if Nicholas timely paid his taxes, including the taxes inuring because of the debt forgiveness, those taxes would have been paid by April 15, 1996. Defendants carefully have not plead payment of the taxes on the amount of the alleged cancelled debt in their December 1, 1998 Answer to Amended Complaint, etc. [110] For the purpose of the instant motion to strike, the court takes it that Nicholas has not in fact acknowledged and paid any additional income taxes because of the alleged debt forgiveness income.
In order to establish the estoppel defense, the defendants had to plead facts to the effect that the defendants, or at least Nicholas, "in good faith relied upon such conduct (the issuance of the Form 1099) and has been led thereby to change his position for the worse." There are no facts plead which tend to establish that the defendants, or any of them, changed their/his position for the worse. The change in position which is an element of estoppel is one taken to the detriment of the party asserting estoppel with respect to the party against whom the estoppel is asserted. The defendants have not alleged they, or any one or more of them, made any change in position to their, his or her detriment in the dispute with the plaintiff. The defendants have not alleged any change in position which strengthens plaintiff's case against them. The defendants have not alleged any change in position which weakens their stance with respect to plaintiff's attempt to foreclose the mortgage and/or satisfy the debt. Nicholas may have reported debt forgiveness income to the taxing authorities, to his detriment. That is not the prejudicial change of position which gives rise to estoppel; a detrimental change in position vis-a-vis a stranger to the dispute in suit, the tax authorities, is not one cognizable for estoppel.
The motion to strike the Second Special Defense is granted. CT Page 4309
 Third Special Defense
In the Third Special Defense, defendants allege:
 "The plaintiff is barred from proceeding on the instrument due to laches. Plaintiff and its predecessors in right, title and interest to the debt instruments delayed in negotiations and in otherwise dealing with Mr. Nicholas, increasing the amount of the alleged debt due to interest accruing and increasing the income taxes of the debtor by issuing him a Form 1099. In addition, over six years have passed since the alleged default. Six years is the statute of limitations for such actions on written contracts, pursuant to Connecticut General Statutes § 52-576."
Answer to Amended Complaint, etc., p. 3. [110]
This third special defense is based on "laches." Laches has two elements.
 "Laches consists of an inexcusable delay which prejudices the defendant." Danaher v. C. N. Flagg Co., 181 Conn. 101, 107, 434 A.2d 944 (1980). "Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." Kurzatkowski v. Kurzatkowski, 142 Conn. 680, 684-85, 116 A.2d 906
(1955). Absent prejudice to the defendant, the mere lapse of time does not constitute laches." Federal Deposit Ins. Corp. v. Voll, 38 Conn. App. 198 (1955).
Defendants assert plaintiff and its predecessors "delayed in negotiations and otherwise in dealing with Mr. Nicholas, increasing the amount of the alleged debt due to interest accruing and increasing the income taxes of the debtor by issuing him a Form 1099." Answer To Amended Complaint, etc., p. 3. [110]
It is hard to conceive how the claimed delays in negotiations give rise to laches. If the note and mortgage were not in trouble, there was no need for negotiations. Delay had no effect on the principal amount of the debt. Defendants at any time could have stemmed the "interest accruing" by paying the obligation. Because defendants did not pay their obligation hardly imposes a duty on the plaintiff or its predecessors even to negotiate with CT Page 4310 the defendants, much less at a pace to defendants' liking. Defendants' inability to pay the loan does not require plaintiff or its predecessors to bend to the defendants' desires. Defendants do not allege facts which might establish plaintiff or its predecessor were legally obligated to forgive, cancel, release, or discharge the debt at any given time.
The defense is lacking in specific fact allegations which might support a laches claim. The extent of the alleged delay is not plead. When the delay occurred is not plead. The circumstances surrounding the alleged delay are not plead. The circumstances which allegedly make the delay "inexcusable" are not plead. Nor are facts plead which could establish prejudice. Accruing interest is not such a fact. There is no allegation that such interest was ever paid. Interest continued to accrue because it was contractually due in accordance with the original 1989 note and because the defendants did not pay their contractual obligation. Interest did not continue to accrue because of any delays attributable to the plaintiff or its predecessors.
Defendants seem to allege that the laches is tied to the issuance of a Form 1099 by plaintiff's predecessor, Resolution Trust Corporation. A Form 1099 must be issued by a financial institution if it cancels a debt of more than $600. The debtor to whom the Form 1099 is issued must report the amount of the canceled debt to the federal and state income tax authorities. The amount of the cancelled debt is treated as income. The debtor incurs an income tax liability on the amount of the debt cancelled.
Insofar as the laches is based on the issuance of the Form 1099, laches fails. The prejudice element is lacking. The prejudice defendants claim, Nicholas' increased tax liability, did not arise from any delay. Further, the claimed prejudice upon which laches can be based is prejudice suffered by defendants, or Nicholas, in dealing with the those against whom laches is asserted, i.e., plaintiff or its predecessors, not a stranger to the transaction such as the taxing authorities. Defendants have not made any allegations that they changed their position thereby jeopardizing their stance relevant to their positions against the plaintiff or its predecessors. The requisite prejudice must arise in the matter between the parties. "Such prejudice results if the defendants are led to change their position with respect to the matter in question. Nauss v. Pinkes, 2 Conn. App. 400, 411,480 A.2d 568, cert. denied, 194 Conn. 808, 483 A.2d 612 (1984)." CT Page 4311Haggerty v. Parniewski, 11 Conn. App. 37 (1987). Here, there is no claim that the defendants, or even Nicholas alone, changed position vis-a-vis the plaintiff or its predecessors.
Insofar as the Third Special Defense is based on C.G.S. §52-576, the reliance is unavailing. See discussion under "Fifth Special Defense."
The motion to strike the Third Special Defense is granted.
 Fourth Special Defense
In the Fourth Special Defense, Defendant Nicholas alleges:
 "The debt is uncollectible and said mortgage has been discharged by operation of law due to this creditor and its predecessors in right, title and interest to the debt instruments breaching their covenant of good faith and fair dealing with Mr. Nicholas, who negotiated and attempted to reach an accord and satisfaction for several years."
Answer to Amended Complaint, etc., p. 3. [110]
The defendants rely on a claimed breach of a covenant of good faith and fair dealing. Defendants' conclusory statement is bereft of any factual allegations to support the defense.
The motion to strike the Fourth Special Defense is granted.
 Fifth Special Defense
In the Fifth Special Defense, defendants allege:
 "The Plaintiff's action is barred by the applicable Statute of Limitations, Connecticut General Statutes § 52-576, in that over six years have passed since the loan was allegedly in default."
Answer to Amended Complaint, etc., p. 4. [110]
Defendants here rely on the statute of limitations, C.G.S. § 52-576. It is a six year statute of limitations. The CT Page 4312 predicate facts are not plead in this defense. However, the plaintiff alleged the note and mortgage have not been paid since May 1991 due to non-payment of the monthly installments due on and after May 1, 1991. First Amended Complaint, ¶¶ 5-6, p. 2. [109] This action began in June 1998.
None of the pleadings allege an acceleration being exercised before plaintiff did in this action. The statute of limitations, C.G.S. § 52-576, would not bar the entire action. It would perhaps bar collection of those monthly installments which became due more than six years before this action started. This action began in June 1998. The monthly installments due before June 1962 might be barred. The debt went into default because the May 1991 payment was not made. Thus, some 13 monthly payments might be barred by C.G.S. § 52-576.
Plaintiff states the Federal Institutions Reform, Recovery, and Enforcement Act of 1994 (FIRREA), 12 U.S.C. § 1821
(d)(14)(A) and (B) override C.G.S. § 52-576. Plaintiff claims FIRREA provides for a six year statute of limitations which runs from the time the FDIC became conservator or receiver of the failed bank here. plaintiff's Memorandum, etc., p. 14-15. [106] The pleadings do not tell when Coastal Savings became insolvent or when Resolution Trust Corporation became its Conservator. Plaintiff alleges the FDIC replaced the conservator and became receiver on May 20, 1994. First Amended Complaint, ¶¶ 4. [109]
The applicable statute provides:
 In general. Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be — (i) in the case of any contract claim, the longer of —
 A. (I) the 6-year period beginning on the date the claim accrues; or
B. (II) the period applicable under State law;.
C. I. Determination of the date on which a claim accrues. For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the CT Page 4313 later of —
 (i) the date of the appointment of the Corporation as conservator or receiver; or
 (ii) the date on which the cause of action accrues.
 12 U.S.C. § 1821 (d)(14)(A) and (B)
By its terms, the FIRREA statute of limitations is for the benefit of the FDIC. The statute does not state that an assignee of the FDIC gets the benefit of the new six year statute. There is some question whether FIRREA statute of limitations inures to the benefit of an assignee of the FDIC. However, the vast majority of federal and state courts which have decided the issue hold that the assignee of the FDIC gets the benefit of the statute's six year limitation period. F.D.I.C. v. Bledsoe,989 F.2d 805, 809 (5 Cir. 1993), and cases cited therein. In the leading case, F.D.I.C. v. Bledsoe, 989 F.2d 805, 809 (5 Cir. 1993), the Fifth Circuit held that an FDIC assignee got the benefit of FIRREA'S six year statute of limitations; the date of the FDIC's acquisition of the loan is the date of accrual of the assignee's cause of action.
In Federal Financial Companies v. Hall, 108 F.3d 128 (4 Cir. 1997), cert. denied, 118 S.Ct. 157 (19), the Fourth Circuit held that as a matter of federal law, the FDIC's assignee did not get advantage of FIRREA's statute of limitations and state (Virginia) statute of limitations applied. The Fourth Circuit criticized the Fifth Circuit's approach and conclusion in Bledsoe. The Fourth Circuit said Bledsoe was erroneous because it used federal common law to arrive at its decision. The Fourth Circuit then stated state law (Virginia) controlled. The Supreme Court of Virginia had held in Union Recovery Ltd. Partnership v. Horton, 252 Va. 418,477 S.E.2d 521 (1996), that an FDIC assignee got the benefit of the FIRREA statute of limitations. It is far from clear to this court whether the Supreme Court of Virginia had arrived at its holding by using federal or Virginia law, or some combination thereof. Nevertheless, the Fourth Circuit says the Virginia court arrived at its decision by using Virginia law. That law was that an assignee "stands in the shoes" of its assignor and therefore gets the benefit of the FIRREA statute of limitations. The Fourth Circuit arrived at the same result as did the Bledsoe holding the FIRREA statute of limitations inured to the benefit of an FDIC CT Page 4314 assignee a matter of state (Virginia) law.
If the Fourth Circuit's approach is correct, then this court must determine Connecticut law on the rights of assignee. Our law is to the effect that an assignee gets the benefit of the rights the assignor. Bouchard v. People's Bank, 219 Conn. 465, 472-3
(1991)
The court holds that the plaintiff gets the benefit of the statute of limitations which the FDIC, its immediate assignor, had, the FIRREA six year statute of limitations.
FIRREA's six year statute of limitations controls.
The motion to strike the Fifth Special Defense is granted.
 Setoff
In the Setoff, defendants allege they owed New London Saving and Loan $206,000 "as evidenced by a promissory note." To secure the note, defendants mortgaged the subject property to the New London Saving and Loan. It changed its name to "Coastal Savings Bank F.S.B." Coastal Savings was later declared insolvent. Resolution Trust Corporation was appointed Coastal's conservator. In April 1995, Resolution Trust cancelled the debt and issued a Form 1099. Thereafter, the plaintiff Franklin Credit was assigned the note and mortgage.
The defendants allege Nicholas, relying on the Form 1099, reported the debt forgiveness on his federal and state income tax returns.
The Setoff concludes:
 "If any amount is found to be due Franklin Credit Management Corporation, defendants claim a setoff to the extent of the increased taxes, interest and any penalties and costs incurred as a result of the issuance of the Form 1099-C." Answer to Amended Complaint, etc., p. 5.
Defendants have not alleged Nicholas actually paid any income taxes based on the alleged debt forgiveness. Even if he had, he would be entitled to a credit for such taxes if it turns out that the debt was not forgiven. Thus, he has no debt to set off CT Page 4315 against plaintiff.
The motion to strike the Setoff is granted.
 COUNTERCLAIMS First Count
This purports to state a cause of action for a declaratory judgment. The Rules of Practice provide that a declaratory judgment will not be rendered
 "(3) where the judicial authority shall be of the opinion that the parties should be left to seek redress by some other form of procedure; or
 "(4) until all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." Practice Book § 17-55.
Whether the debt was discharged and released will be decided by the court when it decides the merits of the complaint. No good reason has been shown why this claim for a declaratory judgment is necessary or even worthwhile. The court's view is that it is unnecessary; the appropriate time and place for resolution of the discharge and release issue is in the context of the court's deciding the merits of the complaint.
It appears to the court that the Resolution Trust Corporation and the FDIC have an interest in this dispute. Until they have had notice of this action and have had an opportunity to appear, the declaratory judgment action cannot proceed.
The motion to strike the First Count of the Counterclaims is granted.
 Second Count
In this count, defendants allege they are entitled to specific performance. Specific performance is a remedy only available in rare circumstances to enforce the terms of an agreement.
Defendants have carefully abstained from alleging there was CT Page 4316 any agreement regarding cancellation, release, discharge or forgiveness of the debt.
Absent an agreement, there can be no action for specific performance.
The motion to strike the Second Count of the Counterclaims is granted.
 Third Count
In this count, "[d]efendants seek a declaratory judgment that plaintiff is estopped from proceeding on the note and mortgage. . . ."
The court has held in connection with the Second Special Defense that the defendants' allegations do not support estoppel. The same is true here. Also, in connection with the First Count of the Counterclaims, the court has held that a declaratory judgment action cannot proceed.
The motion to strike the Third Count of the Counterclaims is granted.
 Fourth Count
In this count, defendants seek a declaratory judgment that laches bars the plaintiff from proceeding on the debt instruments.
The court has held in connection with the Third Special Defense that the defendants' allegations do not support laches. The same is true here. Also, in connection with the First Count of the Counterclaims, the court has held that a declaratory judgment action cannot proceed.
The motion to strike the Fourth Count of the Counterclaims is granted.
 Fifth Count
In this count defendants seek a declaratory judgment that plaintiff is barred from proceeding in this action by reason of its breach of a covenant of good faith and fair dealing. CT Page 4317
In connection with the Fourth Special Defense, the court held that the plaintiff's allegation were insufficient to state a cause of action based on an alleged breach of a covenant of good faith and fair dealing. The conclusory allegations in this count are likewise deficient. Also, in connection with the First Count of the Counterclaims, the court has held that a declaratory judgment action cannot proceed.
The motion to strike the Fifth Count of the Counterclaims is granted.
 Sixth Count
In this count, defendants claim relief under C.G.S. §§49-8, 49-13 and 49-51.
Section 49-8 reads in pertinent part:
 "Sec. 49-8. Release of satisfied or partially satisfied mortgage or ineffective attachment, lis pendens or lien. Damages.
 "(a) The mortgagee or a person authorized by law to release the mortgage shall execute and deliver a release to the extent of the satisfaction tendered before or against receipt of the release: (1) Upon the satisfaction of the mortgage or (2) upon a bona fide offer to satisfy the same in accordance with the terms of the mortgage deed upon the execution of a release, or (3) when the parties in interest have agreed in writing to a partial release of the mortgage where that part of the property securing the partially satisfied mortgage is sufficiently definite and certain, or (4) when the mortgagor has made a bona fide offer in accordance with the terms of the mortgage deed for such partial satisfaction on the execution of such partial release." C.G.S. § 49-8.
This count does not allege the defendants have made payment or the like as set forth in the statute. No relief is available to defendants based on C.G.S. § 49-8; there are no allegations that bring the parties within the statute.
Section 49-13 provides in part:
CT Page 4318 "Sec. 49-13. Petition for discharge of mortgages or of ineffective attachment, us pendens or lien. Damages.
 "(a) When the record title to real property is encumbered (1) by any undischarged mortgage, and (A) the mortgagor or those owning the mortgagor's interest therein have been in undisturbed possession of the property for at least six years after the expiration of the time limited in the mortgage for the full performance of the conditions thereof, and for six years next preceding the commencement of any action under this section, or (B) when the promissory note or other written evidence of the indebtedness secured by the mortgage is payable on demand and seventeen years have passed without any payment on account of such note or other written evidence of indebtedness, or (C) when the mortgage does not disclose the time when the note or indebtedness is payable or disclose the time for full performance of the conditions of the mortgage and seventeen years have passed without any payment on account of the promissory note or other written evidence of indebtedness, or (D) when the note or evidence of indebtedness has been paid or bona fide offer and tender of the payment made pursuant to section 49-8, or (E) when the mortgage has become invalid, and in any of such cases no release of the encumbrance to secure such note or evidence of indebtedness has been given, or (2) by a foreclosed mortgage and the mortgagor has made a bona fide offer and tender of payment of the foreclosure judgment on or before the mortgagor's law day and the mortgagee has refused to accept payment, or (3) by an attachment, lis pendens or other lien which has become of no effect, the person owning the property, or the equity in the property, may bring a petition to the superior court within the judicial district in which the property is situated, setting forth the facts and claiming a judgment as hereinafter provided. The plaintiff may also claim in the petition damages as set forth in section 49-8, if the plaintiff is aggrieved by the failure of the defendant to execute the release therein prescribed." C.G.S. § 49-13.
It is obvious there are no allegations which bring C.G.S. CT Page 4319 § 49-13 into play.
Section 49-51 relates to certificates of lien. It does not apply to mortgages.
The motion to strike the Sixth Count of the Counterclaims is granted.
 Seventh Count
In this count, defendants seek injunctive relief. They have alleged they have no adequate remedy at law. They have not alleged irreparable harm. An action for injunctive relief fails if the party seeking such relief does not allege and prove lack of an adequate remedy at law and irreparable harm. City ofHartford v. American Arbitration Association, 174 Conn. 472
(1978)
The defendants do have an adequate remedy at law. If they can establish in this foreclosure action that the debt was legitimately extinguished, they will prevail in this action.
Since the defendants have failed to allege irreparable harm and do have an adequate remedy at law, injunctive relief cannot be granted.
The motion to strike the Seventh Count of the Counterclaims is granted.
 Eighth Count
In this count, defendants mention slander of title. They have not alleged a slander of title cause of action.
 "A cause of action for slander of title consists of the uttering or publication of a false statement derogatory to the plaintiff's title, with malice, causing special damages as a result of diminished value of the plaintiff's property in the eyes of third parties. The publication must be false, and the plaintiff must have an estate or interest in the property slandered. Pecuniary damages must be shown in order to prevail on a claim." [Footnotes omitted. 50 AmJur2d, Libel and Slander, § 554.
CT Page 4320 There are no allegations of a publication of a false statement derogatory to Lantern Hill's title. There is no allegation that one was made to a third party. There is no allegation of malice. There is no allegation that the value of Lantern Hill's property has been diminished in any one's eyes. There is no allegation of special damages. See 50 AmJur2d, Libel and Slander, §§ 554 et seq. In short, there are no allegations necessary for a slander of title action in the Eighth Count.
The motion to strike the Eighth Count of the Counterclaims is granted.
 Ninth Count
Here, defendants attempt an action to quiet title pursuant to C.G.S. § 47-31. It reads in part:
 "Action to settle title or claim interest in real or personal property. (a) An action may be brought by any person claiming title to, or any interest in, real or personal property, or both, against any person who may claim to own the property, or any part of it, or to have any estate in it, either in fee, for years, for life or in reversion or remainder, or to have any interest in the property, or any lien or encumbrance on it, adverse to the plaintiff, or against any person in whom the land records disclose any interest, lien, claim or title conflicting with the plaintiff's claim, title or interest, for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. Such action may be brought whether or not the plaintiff is entitled to the immediate or exclusive possession of the property." C.G.S. § 47-31
(a).
At first blush, defendant, Lantern Hill Associates, has stated a viable cause of action under C.G.S. § 47-31. Nicholas has no cause of action as it is unequivocally alleged he quitclaimed his interest to Lantern Hill Associates long ago.
Paragraph 6 enumerates the reasons why the plaintiff's mortgage interest in the property is claimed to be invalid, namely, discharge and release, estoppel, laches, breach of an implied covenant of good faith and fair dealing, and the statute CT Page 4321 of limitations, C.G.S. § 52-576. The court has held the claim of discharge and release has been alleged in viable form. The special defenses of estoppel, laches, breach of an implied covenant of good faith and fair dealing, and the statute of limitations, C.G.S. § 52-576, have been ordered stricken. They gain no vitality in this counterclaim.
The motion to strike the Ninth Count of the Counterclaims should be granted to the extent it is predicated on estoppel, laches, breach of an implied covenant of good faith and fair dealing, and the statute of limitations, C.G.S. § 52-576.
There is other good reason to strike this Ninth Count. The sole relief that can be granted under C.G.S. § 47-31 is a judgment determining that the plaintiff's mortgage lien has no validity. The validity of the mortgage necessarily will be determined by the court in deciding the merits of the mortgage foreclosure complaint. Lantern Hill Associates can gain nothing by prosecution of this counterclaim. It is redundant.
The motion to strike the Ninth Count of the Counterclaims is granted.
 Tenth Count
The defendants here rely on the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. [FDCPA]
Defendants' action based on the FDCPA fails because there are no allegations which support a finding that defendants' debt to the plaintiff is a "debt" within the purview of the FDCPA.
 "(5) The term `debt' means any obligation or alleged obligation of consumer to pay money arising out of transaction in which the money, property insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. . . ." 15 U.S.C. § 1692a(5).
There are no allegations which even suggest that this debt was a consumer obligation. The owner of the mortgaged property is Lantern Hill Associates, a partnership. This strongly indicates that the debt is a commercial obligation and not a consumer debt. A debt for a commercial purpose is not a debt within the FDCPA.Bloom v. I.C. Systems, Inc., 972 F.2d 1067 (9 Cir. 1992). CT Page 4322 Franklin Credit is trying to collect a debt owed to it, not a debt owed to another. In such case, it is not subject to the FDCPA. 15 U.S.C. § 1692a(5). KPMG Peat Marwick v. TexasCommerce Bank, 976 F. Sup. 623, 632 (E.D. Tex. 1997). See annotation: What Constitutes "Debt" and "Debt Collection" For Purposes of Fair Debt Collection Practices Act (15 U.S.C.S. § 169 2(a)(5), (6), 62 ALR Fed 552.
The motion to strike the Tenth Count of the Counterclaims is granted.
 Eleventh Count
Alas, the inevitable and ubiquitous CUTPA claim! Connecticut Unfair Trade Practices Act, C.G.S. § 42-110a et seq.
The court has already ruled that most of the constituent claims now lumped into this attempted CUTPA cause of action should be stricken. They gain no validity en masse.
The motion to strike the Tenth Count of the Counterclaims is granted.
 SUMMARY
The plaintiff's Motion To Strike is granted as to the Second, Third, Fourth, and Fifth Special Defenses, the Setoff, and all eleven counts of the Counterclaims. The motion is denied as to the First Special Defense.
Defendants' "kitchen-sink" approach to pleading belongs down the disposal.
Parker, J.
A:\FRANCRED.NIC