## John C. Fuessenich et al. v. Pasquale DiNardo et al.
### (12236)

Peters, C. J., Healey, Parskey, Shea and Dannehy, Js.

Argued November 13, 1984—decision released February 5, 1985

*Lorraine W. Osborne,* with whom, on the brief, was *Daniel Shepro,* for the appellants (defendants).

*E. Seward Stevens,* with whom, on the brief, was *H. Gibson Guion,* for the appellees (plaintiffs).

ARTHUR H. HEALEY, J. The defendants, Pasquale DiNardo, Trustee, and Pat DiNardo & Associates, appeal from a judgment for the plaintiffs rendered by the trial court, *Sullivan, J.,* in this case involving a road construction contract. The defendants were held jointly and severally liable to the plaintiffs in the amount of $40,240 plus costs.

The plaintiffs, John C. Fuessenich and Barry Construction Co., both have thirty years of experience as excavating contractors. On May 4, 1978, the plaintiffs entered into a contract with the defendant Pasquale DiNardo, under which the plaintiffs agreed to construct in accordance with certain plans four town roads, designated as Roads A, B, C and D, in the Avalon Farms subdivision located in the town of Litchfield. These roads were to be "built to Town of Litchfield highway specifications." The contract was signed by the plaintiffs and "Pat DiNardo, Trustee." The trial court found that Pat DiNardo, also known as Pasquale DiNardo, was trustee for Myron Chapko, Ralph DiNardo and himself. The contract was submitted by the plaintiffs to the defendant "Pat DiNardo & Associates" which was also comprised of Pasquale DiNardo, Ralph DiNardo and Myron Chapko. The defendants owned the Avalon Farms subdivision.

The contract provided for the completion by the plaintiffs of nine listed items, and the price was specified "for payment purposes" for each item as follows:

| | |
|---|---|
| "Clearing & grubing [sic] | [$]8,000.00 |
| "Rough excavating | 25,000.00 |
| "Catchbasins & storm drainage | 25,000.00 |

| | |
|---|---|
| "Ledge | 5,000.00 |
| "Under drain | 15,000.00 |
| "Rip Rap | 15,000.00 |
| "Gravel on roads | 25,000.00 |
| "Top soil in place | 12,000.00 |
| "Paving & curbs | 95,000.00" |

The total price provided in the contract for completed performance by the plaintiffs was $225,000. The parties did not expressly provide in the contract for progress payments or any kind of a payment schedule; nor was a completion date stated for any of the work to be performed thereunder.

The plaintiffs commenced performance of the contract about one week after it was signed and subsequently terminated their work in June, 1979. During that period, the plaintiffs completed the first six items specified in the contract, the contract price of which totalled $93,000. The plaintiffs also completed performance of parts of each of the remaining three contract items. In June, 1979, the plaintiffs refused to do any further work under the contract as there was "zero cash flow" from the defendants who could no longer make payments to the plaintiffs for the work being performed. At the time work ceased, roads B and C were completed.

In May, 1979, the plaintiffs had subcontracted out the paving portion of the contract to the Waters Construction Company, Inc. Because the defendants had ceased payments, the plaintiffs themselves each had to pay this subcontractor $18,120, for a total payment of $36,240. Meanwhile, the defendants had "paid the plaintiffs a total of $120,000 toward the contract price." No indication exists in the record that the town of Litchfield or the defendants were dissatisfied with the quality of the plaintiffs' completed work.

The plaintiffs initiated this action by a complaint in one count seeking an additional $53,300 above the $120,000 sum already paid them by the defendants. The defendants denied the amount claimed was due, and in a special defense they alleged that the plaintiffs were in breach for refusing "to perform the remainder of the work outlined in the contract" and that "Pat DiNardo, Trustee" had paid them "the full amount due and owing under the aforesaid contract." The defendants also counterclaimed against the plaintiffs seeking a refund of $27,000 from the $120,000 originally paid to the plaintiffs and other damages allegedly flowing from the claimed breach. The record discloses that at no time did the defendants challenge the lack of specificity of the plaintiffs' pleadings nor did the defendants claim at trial ambiguity or confusion as to the nature of the plaintiffs' claim.

At trial, the plaintiffs claimed due a total of $40,240 for the seventh, eighth and ninth contract items. For the first six items the trial court found the plaintiffs were due $93,000 "on the contract between the parties." The trial court further found that the plaintiffs were due $25,000 for gravel, $6000 for topsoil and $36,240 for paving and curbs. In total, the plaintiffs were owed the amount of $160,240, $120,000 of which had already been paid, leaving a balance of $40,240. The trial court rendered judgment in that amount plus costs for the plaintiffs against the defendants, Pasquale DiNardo, Trustee, and Pat DiNardo Associates, jointly and severally. The trial court subsequently amended its memorandum of decision and judgment to include judgment for the plaintiffs on all of the counts set forth in counterclaims, which the defendants do not contest on this appeal.

The defendants claim on appeal that the trial court erred: (1) in allowing the plaintiffs to recover both on the express contract and for quantum meruit; (2)

because the allegations of the plaintiffs' complaint do not provide a basis for recovery; (3) because the plaintiffs did not prove damages; (4) in admitting into evidence the contract and other transactions between the plaintiffs and the subcontractor, Waters Construction Company; and (5) in admitting into evidence testimony regarding Pasquale DiNardo's associates and by rendering judgment against the defendant Pat DiNardo & Associates. We find no error.

I

The defendants challenge first the sufficiency of the plaintiffs' pleadings. Specifically, they claim that the plaintiffs impermissibly recovered damages under a single count complaint for both express contract and quantum meruit which the defendants contend are two mutually exclusive theories of recovery. Additionally, they claim that the allegations of the plaintiffs' complaint do not provide any basis for recovery. The plaintiffs, on the other hand, argue that the allegations in the complaint set forth a claim under an express contract and that the present case was tried by the parties and heard and decided by the trial court on an express contract theory. The plaintiffs also contend that the defendants waived any right to complain about the sufficiency of the pleadings by not raising these claims with the trial court. We find these claims of the defendants unpersuasive.

When a pleading does not fully disclose the grounds relied thereon, our rules of practice allow the responding party to move the trial court to order a more complete statement of the claim raised in a pleading. Practice Book §§ 108 and 147 (1);[1] *Gauvin* v. *New*

---

[1] Practice Book § 108 provides in relevant part: "If any such pleading does not fully disclose the ground of claim or defense, the court may order a fuller and more particular statement; and, if in the opinion of the court the pleadings do not sufficiently define the issues in dispute, it may direct

*Haven,* 187 Conn. 180, 184, 445 A.2d 1 (1982). In the event that a party believes it is called upon to respond to a pleading that improperly combines two or more claims in a single count, our rules permit the filing of a timely request to revise that pleading. Practice Book § 147 (3);[2] see *Burgess* v. *Vanguard Ins. Co.,* 192 Conn. 124, 470 A.2d 244 (1984); *Rodriguez* v. *Mallory Battery Co.,* 188 Conn. 145, 448 A.2d 829 (1982). We note that the defendants in the present case did not pursue with the trial court either of these procedural avenues to seek relief from the infirmities they now assert on appeal. The appeal process should not be utilized to seek to correct pleading deficiencies the party complaining clearly could have remedied under our rules in the trial court.[3] *Schaeffer* v. *Schaeffer,* 128 Conn. 628, 636–37,

the parties to prepare other issues, and such issues shall, if the parties differ, be settled by the court."

Practice Book § 147 (Request to Revise) provides: "Whenever any party desires to obtain (1) a more complete or particular statement of the allegations of an adverse party's pleading . . . the party desiring any such amendment in an adverse party's pleading may file a timely request to revise that pleading."

[2] Practice Book § 147 (Request to Revise) provides that: "Whenever any party desires to obtain . . . (3) separation of causes of action which may be united in one complaint when they are improperly combined in one count, or the separation of two or more grounds of defense improperly combined in one defense . . . the party desiring any such amendment in an adverse party's pleading may file a timely request to revise that pleading."

[3] We note that the defendants filed an answer with special defenses and counterclaims to the plaintiffs' complaint without first requesting that the complaint be revised. The defendants also answered the plaintiffs' substitute complaint without a request to revise. Accordingly, the defendants were not thereafter entitled to make a request to revise unless the trial court granted permission to do so. Practice Book §§ 112, 113.

The transcript reveals that the defendants' counsel, in arguing for judgment against the plaintiffs for failure to establish a prima facie case, stated: "Further than that, I think the law in Connecticut is when one has a written contract and claims under that contract, one cannot be paid for reasonable value of services. One must collect under the contract. I think this was discussed at a pretrial sometime ago and so I don't think I am giving any surprise to anyone by making that claim.

"So under the allegations of the complaint not only is the 3rd paragraph not proven, but I don't think it could be proven." Neither the record nor

25 A.2d 243 (1942); *Nocera* v. *LaMattina,* 109 Conn. 589, 592–93, 145 A. 271 (1929); cf. General Statutes § 52-123; *Hartford National Bank & Trust Co.* v. *Tucker,* 178 Conn. 472, 478, 423 A.2d 141 (1979).

Further, the defendants' contention that the complaint impermissibly sounded in both express contract and quantum meruit is not persuasive.[4] The complaint alleged that the plaintiffs submitted a "proposal" to the defendants which was accepted and under which the plaintiffs and the defendants began performance. The plaintiffs' complaint sought damages for the "reasonable worth" of work performed and materials supplied. "We reject a formalistic, highly technical view of pleading requirements. 'Under modern rules of

the transcript indicate, and the defendants in their brief do not claim, that the defendants sought appropriate pretrial relief regarding any alleged infirmity in the plaintiffs' pleadings. In fact, the defendants' answer was not filed until June 14, 1982, in response to the plaintiffs' original complaint filed July 7, 1981.

[4] The plaintiffs' complaint alleges the following:

"The Plaintiffs complain and say:

"1. On or about April 17, 1978, the plaintiffs submitted a proposal to defendant. Said proposal was accepted by defendant and a copy of same is attached hereto and made a part hereof marked 'Exhibit A.'

"2. Plaintiffs worked under the proposal, Exhibit A, on roads at Avalon Farms, Town and County of Litchfield, State of Connecticut, completed the first six items on Exhibit A and part of the 7th, 8th and 9th for which work they were paid by defendants the sum of $120,000.00 on account.

"3. Said work and materials were reasonably worth an additional $53,300.00 above the $120,000.00 noted above for which sum plaintiffs have made oral and written demand but which sum has not been paid.

"Plaintiffs claim damages.

"David B. Tilley, Sr. of Litchfield, Connecticut, is recognized in the sum of $250.00 to prosecute, etc.

"Dated at Litchfield, Connecticut, this 9th day of November, 1982.

/s/ E. Seward Stevens
"Commissioner of the Superior Court

"Plaintiffs claim:

"1. Damages in excess of $7500.00.

"2. Costs of this action.

"3. Such other relief as to the Court may appear just and equitable in the circumstances."

pleading, slight linguistic ambiguity should not be fatal to a cause of action.' *Schenck* v. *Pelkey,* 176 Conn. 245, 255, 405 A.2d 665 (1978)." *O'Brien* v. *Seyer,* 183 Conn. 199, 210–11, 439 A.2d 292 (1981). We note that the "reasonable worth" language in the complaint is reflected in prior decisions of this court involving part performance of a contract. See, e.g., *Automobile Ins. Co.* v. *Model Family Launderies, Inc.,* 133 Conn. 433, 439–41, 52 A.2d 137 (1947). While the complaint does not expressly state that damages were sought on the contract, a fair and reasonable interpretation of the record and the trial transcript indicates that not only did the parties present the case at trial on an express contract theory, but also the trial court so understood the case.[5] We review this case on the theory upon which it was tried and upon which the trial court decided it. See *Machiz* v. *Homer Harmon, Inc.,* 146 Conn. 523, 525, 152 A.2d 629 (1959); *Cole* v. *Steinlauf,* 144 Conn. 629, 632, 136 A.2d 744 (1957); Maltbie, Conn. App. Proc. § 42.

The trial court could have properly concluded on the evidence presented that the defendants were in breach of their contract with the plaintiffs; that it did so conclude is evident from its finding the issues for the plaintiffs both on their complaint and on all of the counts alleged in the defendants' counterclaim. Moreover, the trial court could have reasonably found the plaintiffs were entitled to the amount of $40,240 either on the contract pursuant to a theory of part performance or one of quantum meruit. 17 Am. Jur. 2d, Contracts § 382, pp. 826–27; see generally Dobbs, Handbook on the Law of Remedies § 12.24. Our rules recognize that in contract actions a variance in the proof does not preclude a party from recovery of either the contract price

---

[5] The defendants do not claim, nor could they claim on these facts, unfair surprise as to the nature of the plaintiffs' allegations in the complaint. See *Schaller* v. *Roadside Inn, Inc.,* 154 Conn. 61, 67, 221 A.2d 263 (1966).

or a reasonable price. Practice Book § 193;[6] *Cecio Bros., Inc.* v. *Feldmann,* 161 Conn. 265, 272, 287 A.2d 374 (1971); *Strimiska* v. *Yates,* 158 Conn. 179, 183, 257 A.2d 814 (1969); *Shmilovitz* v. *Bares,* 75 Conn. 714, 715–16, 55 A. 560 (1903).

In *Cecio Bros., Inc.* v. *Feldmann,* supra, an action to recover for monies allegedly owed to the plaintiffs relative to road construction work, the defendant's basic claim was "that the trial court erred in predicating its determination of the defendant's liability to the plaintiff on an express contract requiring payment on a time and material basis rather than on one essentially sounding in quantum meruit." Id., 272. There the defendant argued that "the plaintiff's complaint sounds in quantum meruit and not in express contract and, therefore, there was a material variance between the allegations in the complaint and the proof of damages offered by the plaintiff at the trial." Id. In rejecting the defendant's claim, we held, citing Practice Book, 1963, § 150, the precursor of Practice Book § 193, that "[e]ven assuming that the defendant is correct in his contention that the complaint is one grounded in quantum meruit, a contention we need not consider, a variance between the plaintiff's proof and its pleading would not be a material variance. Practice Book § 150; see *Strimiska* v. *Yates,* 158 Conn. 179, 183, 257 A.2d 814 [1969]." Id.; see also *Shmilovitz* v. *Bares,* supra. Under the circumstances, the defendants' claims of variance in the present case lack merit. The rationale of *Cecio* is especially applicable here because the plaintiffs made no claims of damages for work done in addition to that required by the contract.

---

[6] Practice Book § 193 provides: "In an action for goods sold at a reasonable price, if the proof is that they were sold at an agreed price, the plaintiff shall not be precluded, on the ground of a variance, from recovering such agreed price; and in an action for goods sold at an agreed price he may recover a different or a reasonable price, if the proof fails to establish the price alleged; and the like rule shall prevail in actions for work done, materials furnished, or use and occupation of land."

## II

The defendants' next two claims are interrelated: (1) that the plaintiffs at trial did not prove damages; and (2) that the trial court erred in admitting into evidence the contract and other transactions between the plaintiffs and the subcontractor, Waters Construction Company. We address first the defendants' claim that the evidence was insufficient to establish damages. "As a general rule, contract damages are awarded to place the injured party in the same position as he would have been in had the contract been fully performed. *Bachman* v. *Fortuna,* 145 Conn. 191, 194, 141 A.2d 477 [1958]; *Lee* v. *Harris,* 85 Conn. 212, 214, 82 A. 186 [1912]. We recognize that '[t]here is no unbending rule as to the evidence by which such compensation is to be determined'; *Bachman* v. *Fortuna,* supra; *Lee* v. *Harris,* supra; and that damages may be based on 'reasonable and probable estimates.' *Kay Petroleum Corporation* v. *Piergrossi,* 137 Conn. 620, 624, 79 A.2d 829 [1951]. But it is equally clear that damages must be based on evidence. 'In the ordinary contract action the court determines the just damages from evidence offered.' *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.,* 153 Conn. 681, 689, 220 A.2d 263 [1966]." *Bertozzi* v. *McCarthy,* 164 Conn. 463, 468, 323 A.2d 553 (1973); see *Braithwaite* v. *Lee,* 125 Conn. 10, 13–14, 2 A.2d 380 (1938). In an action at law based upon contract the court "must have evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount." *Bronson & Townsend Co.* v. *Battistoni,* 167 Conn. 321, 326–27, 355 A.2d 299 (1974). Where recovery is sought to be measured by the value of the services rendered, the court must have evidence to which it can apply an evaluation of a reasonable amount of damages. Id.; *Freda* v. *Smith,* 142

Conn. 126, 134, 111 A.2d 679 (1955). This claim also goes to the weight of the evidence presented and the credibility of the witnesses who testified at trial. *Edens v. Kole Construction Co.,* 188 Conn. 489, 494–95, 450 A.2d 1161 (1982). The trial court properly concluded that the plaintiffs sustained their burden of proof on the issue of damages and, therefore, its determination was not clearly erroneous. Practice Book § 3060D.

At trial, testimony was presented, and it is not disputed, that the first six items of the contract were completed by the plaintiffs. The bulk of the trial testimony concerned the final three contract items: the gravel, topsoil, and paving and curbs. As to the issue of the gravel, the plaintiff John Fuessenich testified that: 90 percent of the processed gravel work was completed on all four of the roads; the bank run gravel was completed on all four roads; and all the roads were "basically ready for paving." The contract price for the "gravel" item, $25,000, was awarded to the plaintiffs by the trial court. Fuessenich also testified that the "topsoil" job was completed on roads B and C, which was "approximately half of the job." The court awarded the plaintiffs $6000 for the topsoil, one-half of the $12,000 contract price. The trial court also awarded the plaintiffs $36,240 for the final contract item, "paving and curbs." Regarding that item, the plaintiffs had testified that this figure was the amount they had paid for that work to their subcontractor, Waters, who had actually performed this job.[7] In addition to the testi-

---

[7] The defendants cite *Johnson v. Flammia,* 169 Conn. 491, 363 A.3d 1048 (1975), in support of their claim that the trial court's conclusion awarding the plaintiffs $36,240 for the paving and curbing job, the amount they paid Waters Construction Company, is based upon speculative and problematical considerations. In *Johnson v. Flammia,* supra, 500, we stated that "[d]amages should be established with reasonable certainty and not speculatively and problematically. 25 C.J.S., Damages § 41." There, however, we were addressing a claim for damages for loss of use or enjoyment of property, an area in which proof of actual damages can be arguably more troublesome than a claim specifically arising out of the contract itself. See *Johnson v. Flammia,* supra, 501.

mony at trial, the following were among the exhibits presented to the trial court: a copy of the original "proposal" signed by the plaintiffs and Pat DiNardo, Trustee; a "composite sketch" of the Avalon Farms subdivision; sixteen pages of "prints" consisting of topographical, general and planning maps of Avalon Farms certified by the Litchfield town clerk; a copy of the contract between the plaintiff Fuessenich and Waters; a certified check voucher of $18,120 payable to the "Waters Constr. Co. Inc." and charged to "Barry Construction, Inc."; and the bank statement of "John C. Fuessenich Excavating" showing a posting of an $18,120 debit. The defendant Pasquale DiNardo testified that he felt that he owed the plaintiffs only $18,000 in total. The record and transcript further indicate that the defendants had the opportunity both to cross-examine the plaintiffs, who each had at least thirty years of experience in the construction business, and to present additional evidence to counter their testimony.

The defendants also argue that the trial court erred in allowing into evidence the contract between the plaintiffs and the subcontractor, Waters Construction Company. The defendants claim that evidence of this subcontract was irrelevant and immaterial to the specific issues before the trial court, i.e., whether the plaintiffs performed work under the original contract between them and the defendants and, if so, were they compensated therefor. Moreover, the defendants argue that the admission into evidence of this subcontract prejudiced them in that it formed the actual basis for the trial court's award of damages for the paving and curbing of roads B and C. The plaintiffs submit that they were fully qualified to testify to the adequacy and value of that contract item performed by the subcontractor, and the trial court therefore properly accepted

the figure paid by them to the subcontractor for the work in question.

In its memorandum of decision, the trial court stated in regards to the paving and curbing jobs: "On May 17, 1979 the plaintiffs by John C. Fuessenich signed a contract with Waters Construction Company, Inc. to subcontract the paving portion of the contract between the plaintiffs and defendants. (See Exhibit D.) When Waters Construction Company, Inc. completed paving Roads B and C, the defendants did not pay the plaintiffs so they had to pay for said paving themselves. Each plaintiff paid Waters Construction Company, Inc. $18,120.00 for a total of $36,240.00. (See Exhibits E and G.) When this occurred the plaintiffs ceased work on this project. . . . The last item of the plaintiff's [sic] claims is $36,240.00 for paving and curbs. . . . From the evidence the Court concludes that the plaintiffs are due . . . $36,240.00 for paving and curbs . . . ."

While there may arguably be some merit to a claim that the award of damages on the paving and curbing item should not be based upon the Waters' subcontract in this case, we agree with the plaintiffs' argument that the trial court could have accepted the plaintiffs' evidence concerning their opinion of the "reasonable worth" of that item of the contract, including the testimony as to the amount paid to the subcontractor. "[P]roof of the expenses paid . . . affords some evidence of the value of the services, and if unreasonableness in amount does not appear from other evidence or through application of the trier's general knowledge of the subject-matter, its reasonableness will be presumed." *Flynn* v. *First National Bank & Trust Co.*, 131 Conn. 430, 436, 40 A.2d 770 (1944), quoting *Carangelo* v. *Nutmeg Farm, Inc.*, 115 Conn. 457, 462, 162 A. 4 (1932); see *Tompkins, Inc.* v. *Bridgeport*, 94 Conn. 659, 110 A. 183 (1920). That reasoning applies here, especially considering the long experience of both

plaintiffs in the construction business and the defendants' opportunity for their cross-examination. Moreover, because the trial court's memorandum does not expressly state the basis for its finding on the paving and curbing award, the defendants, by not seeking articulation, cannot fault the record on this item to require that we hold the trial court's determination of this item clearly erroneous. *Kakadelis* v. *DeFabritis,* 191 Conn. 276, 276 n.1, 464 A.2d 57 (1983); *Barnes* v. *Barnes,* 190 Conn. 491, 493–94, 460 A.2d 1302 (1983); *DeMilo* v. *West Haven,* 189 Conn. 671, 681, 458 A.2d 362 (1983); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 222 n.5, 435 A.2d 24 (1980); Practice Book § 3060D.[8]

### III

Finally, the defendants claim that the trial court erred in permitting testimony from Pat (Pasquale) DiNardo as to the identity of the parties for whom he was Trustee. He himself testified that he was "trustee" for Ralph DiNardo, Myron Chapko and himself. It is claimed that such evidence was not only irrelevant because they were not parties to the action, but also that it was prejudicial to Pat DiNardo's economic expectancies. In addition, it is asserted that the defendant Pat DiNardo & Associates played no part in the transaction involved in this case and that, inter alia, there was no evidence that this defendant had any business relationship with the defendant Pat DiNardo, Trustee, nor any involvement in the construction of the roads in the Avalon Farms subdivision. In any event, the defendants argue that any liability should be limited only to Pat DiNardo, Trustee, as he alone had signed the contract. We do not agree.

---

[8] A footnote has the same binding force and effect as the language contained in the body of the opinion. *State* v. *Parker,* 194 Conn. 650, 662 n.4, 485 A.2d 139 (1984) (*Healey, J.,* dissenting).

Certain circumstances, which find support in the record, should be set out as background at this point. The trial court found that Pat DiNardo was trustee for Ralph DiNardo, Myron Chapko and himself and that Pat DiNardo and Pasquale DiNardo are the same person. Moreover, the court also found that the defendant Pat DiNardo & Associates was comprised of Pasquale DiNardo, Ralph DiNardo and Myron Chapko. It then found that the plaintiffs signed the contract in question with the defendant Pat DiNardo, Trustee, to construct four roads in a subdivision known as Avalon Farms in Litchfield "owned by the defendants." This contract, which was in evidence, sets out in its terms that it was "submitted" to "Pat DiNardo & Associates" and yet it is signed only by Pat DiNardo, Trustee. Actually, the defendants' answer served to put in issue matter the defendants now claim as error. The plaintiffs alleged in their complaint that they "submitted" a proposal which was accepted. The defendant Pat DiNardo & Associates denied this allegation while the defendant Pat DiNardo, Trustee, admitted it. It therefore devolved upon the plaintiffs to prove their allegations against the defendant Pat DiNardo & Associates. They thus set the stage that justified exploration of this issue, which ultimately included the identity of the persons involved in this contract.

The surety bond, dated November 21, 1977, disclosed that it ran to the town of Litchfield from Avalon Farms, a "partnership" with the partners listed on the face of the bond as being "Pasquale DiNardo," "Ralph DiNardo" and "Myron Chomko [sic]" "as partners," to insure the completion of the roads in the Avalon Farms subdivision. This bond itself is signed "Avalon Farms, A Partnership by Pat DiNardo" and "Partners by Ralph DiNardo, Pat DiNardo [and] Myron Chomko [sic]." Significantly, Pat DiNardo himself testified that Avalon Farms, a partnership, was not "any different

than Pat DiNardo, Trustee." Moreover, he also testified that at the time the bond was signed, "Avalon Farms, A partnership" was the same as Pat DiNardo, Trustee. There was evidence that the amount of liability on that bond was reduced on the basis of satisfactory work done on roads in that subdivision by the plaintiffs. Therefore, the record supports a conclusion that the work performed on the roads accrued to the benefit of those who had an ownership interest in the subdivision who accepted these improvements. From the record, such interest was in Pat DiNardo, Trustee, Pat DiNardo & Associates and Avalon Farms.

General Statutes § 52-112[9] allows suit in the partnership name without naming the partners individually. *Dayco Corporation* v. *Fred T. Roberts & Co.*, 192 Conn. 497, 501, 472 A.2d 780 (1984). Under General Statutes § 34-53,[10] all partners are jointly and severally liable for partnership debts. The contract under which the plaintiffs undertook to do the road work in question was, in effect, made with one who was acting as an agent and not a trustee, and therefore his principals, i.e., the other partners, were liable. The existence of an agency is a question of fact. See, e.g., *McLaughlin* v. *Chicken Delight, Inc.*, 164 Conn. 317, 322–23, 321 A.2d 456 (1973). "Whether a relationship of trust or of agency is created depends upon the intention of the parties." 1 Scott, The Law of Trusts (3d Ed.) § 8,

[9] General Statutes § 52-112 (a) provides: "In commencing a civil action by or against a partnership, it shall not be necessary to insert the names of the partners in the process, provided the partnership name is stated. The plaintiff shall have the right, within the first three days of the court after the return day, to amend the process without costs by inserting the names of the partners."

[10] General Statutes § 34-53 provides: "LIABILITY OF PARTNERS. All partners are liable: (a) Jointly and severally for everything chargeable to the partnership under sections 34-51 and 34-52; (b) jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract."

p. 78; 1 Restatement (Second), Agency § 14B, comment c. The circumstance that the representative is called a "trustee" has not prevented courts from finding that he was in fact an agent. See Bogert, Law of Trusts (5th Ed.) § 16, p. 34 n.95. The court, in effect, concluded that the defendant Pat DiNardo, Trustee, was for the purposes of the contract an agent rather than a trustee; therefore, the principals were properly held liable. We cannot say such a decision, under the circumstances, holding the defendants jointly and severally liable was clearly erroneous. Practice Book § 3060D.

There is no error.

In this opinion the other judges concurred.