KHOSORO MALEK LASHGARI *v.* SIMIN DOKHT LASHGARI
(12293)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

---

[5] Practice Book § 609 was repealed as of October 1, 1984.

Argued May 1—decision released August 13, 1985

*Charles L. Flynn,* with whom, on the brief, was *Howard A. Lawrence,* for the appellant (plaintiff).

*James R. Greenfield,* for the appellee (defendant).

ARTHUR H. HEALEY, J. This case essentially involves the question of whether the trial court, *Hon. Joseph W. Bogdanski,* state trial referee, erred when it determined that the plaintiff husband had not satisfied a judgment debt incurred from a valid and final judgment rendered by a court in this state, and, therefore, was not entitled to postjudgment relief. It is necessary to the disposition of the plaintiff's appeal to develop the underlying facts as found[1] by the trial court.

---

[1] The plaintiff's brief refers to a number of "facts" in this case which the trial court did not find as facts. We have said that although our rules

In 1971, the plaintiff husband and the defendant wife, both Iranian nationals, married in Iran. A marriage contract was involved, and under it the plaintiff husband agreed to pay to the defendant wife a "mahr," an obligation assumed pursuant to an Iranian marriage contract, in the amount of one million, two hundred thousand (1,200,000) rials, valued then at about $18,000 in American money. The plaintiff did not remit this amount to the defendant spouse at that time. Shortly thereafter, they came to the United States. The defendant returned alone to Iran in 1976, and, upon attempting to depart in order to rejoin the plaintiff in this country, she discovered that the plaintiff, under the laws of Iran, had denied her permission to leave that country. The defendant then authorized her father in Iran to enforce the collection of the "mahr." Thereafter, she obtained a student visa and returned to the United States. In the interim, the established government in Iran was toppled and a change in administration occurred; subsequent events there are a matter of historical record.[2]

The plaintiff, in 1979, instituted an action in Connecticut for dissolution of the parties' marriage. The defendant counterclaimed seeking damages for the breach of the parties' marriage contract.[3] Meanwhile, as a result

---

of practice have changed and we no longer have findings of fact as we did prior to the change, " '[a] reference made merely in the "statement of facts" in the brief, without support in the finding [in the trial court's memorandum of decision], does not constitute a fact in the case.' . . ." *Grunschlag* v. *Ethel Walker School, Inc.,* 189 Conn. 316, 320, 455 A.2d 1332 (1983), quoting *Windham Community Municipal Hospital* v. *Willimantic,* 166 Conn. 113, 123 n.6, 348 A.2d 651 (1974).

[2] See generally *Dames & Moore* v. *Regan,* 453 U.S. 654, 662–66, 101 S. Ct. 2972, 69 L. Ed. 2d 918 (1981); *New England Merchants National Bank* v. *Iran Power Generation & Transmission Co.,* 502 F. Sup. 120, 122 (S.D.N.Y. 1980), rem'd for further proceedings, 646 F.2d 779 (2d Cir. 1981), on remand, 518 F. Sup. 69 (S.D.N.Y.), rev'd, 657 F.2d 3 (2d Cir. 1981).

[3] Although the parties and the trial court refer to the defendant's claim as a "cross complaint," it is under our practice rules a counterclaim. See

of the enforcement proceedings undertaken by the defendant in Iran and in accordance with Iranian procedure, real property owned by the plaintiff in Iran that was allegedly available to satisfy his debt under the "mahr" was made subject to "auction" there. At the trial before *D. Dorsey, J.,* the plaintiff "called the court's attention to the fact that the lien against his property in Iran was subject to forfeiture." The trial court, *D. Dorsey, J.,* rendered judgment on October 16, 1980, dissolving the marriage of the parties, and, notwithstanding the plaintiff's claims that his property in Iran would satisfy his debt under the "mahr," the trial court also rendered judgment awarding the defendant damages in the amount of $15,789.47 on her counterclaim for breach of the marriage contract. From this judgment the plaintiff took no appeal.

Subsequent to a reargument by these parties, the trial court, *D. Dorsey, J.,* on December 22, 1980, modified its earlier judgment involving the defendant's counterclaim as follows: "Judgment modified to the extent that the parties shall cooperate in arranging [for] sale of real estate owned by the plaintiff which is subject to defendant's lien in Iran and the net proceeds of such sale, *when paid by the plaintiff to the defendant,* shall be credited against the balance of any remaining judgment debt of the second count [of the defendant's counterclaim]." (Emphasis added.) The plaintiff also did not appeal from this modification of the earlier judgment.

Contrary to the terms of the modified judgment, the plaintiff did not arrange for a sale of his Iranian property. Instead, as the trial court found, he "arranged for the removal of the lien by paying a sum of money into the Bank of Iran, in effect substituting a bond for the attached property." On October 6, 1981, a govern-

*Home Oil Co.* v. *Todd,* 195 Conn. 333, 340, 487 A.2d 1095 (1985); see also *Perille* v. *Raybestos-Manhattan-Europe, Inc.,* 196 Conn. 529, 531 n.2, 494 A.2d 555 (1985).

mental certificate was issued in Iran stating that the debt had been "totally discharged" by members of the plaintiff's family and that it was now the defendant's obligation to claim payment. No money was paid in this country by the plaintiff to the defendant on account of the "mahr" debt. The defendant did not seek payment of her claim in Iran.[4] Rather, on January 25, 1982, she moved the trial court in Connecticut for an order to collect on the unsatisfied Connecticut judgment involving the debt on the "mahr." The plaintiff, on March 30, 1982, filed an "application for a rule to show cause" requesting the following alternative relief: "(1) that the defendant be barred from executing on the judgment; (2) that the court find that the indebtedness under the marriage contract had been fully paid; (3) that satisfaction in Iran constitutes satisfaction of the United States cause [of action]; (4) that a declaratory judgment enter to the effect that payment of the marriage debt in Iran is payment of the same debt upon which [the Connecticut] judgment was rendered; (5) that a permanent injunction issue restraining the defendant from executing upon her judgment, and (6) such other relief as in equity may appertain." In response to the plaintiff's thirty-three paragraph application for a rule to show cause, the defendant filed an "Answer" to each of these paragraphs. The defendant contended, inter alia, that the plaintiff's attempt to enjoin enforcement of the judgment debt was "nothing more than a collateral attack on the judgment on . . . matters which should have been raised on appeal or which could have been raised at the time of trial."

---

[4] The trial court, *Hon. Joseph W. Bogdanski,* state trial referee, specifically found that the defendant was "not seeking payment of the claim in Iran and is prepared to sign a release [to that effect] to the plaintiff. She seeks payment only of the judgment of this court." The trial court further found that the "plaintiff now knows that the defendant cannot return to Iran, and that she cannot take the money out of Iran and bring it to the United States." We find support for these conclusions in the record.

The trial court, *Hon. Joseph W. Bogdanski*, state trial referee, denied the relief sought by the plaintiff's application for a rule to show cause. In its memorandum of decision, the court reasoned that it was the plaintiff who had first applied to the Connecticut court for a dissolution of the parties' marriage and, having invoked Connecticut's jurisdiction over the parties and the marriage, he "was presumed to know that the wife had the right to file an answer to his complaint, and, by way of [counterclaim], seek relief for herself." Moreover, as the trial court further noted, the plaintiff "had every opportunity" to defend against the defendant's counterclaim in the dissolution action and the plaintiff did not appeal the judgment rendered in that action. The trial court also found that "the plaintiff, instead of taking advantage of the modification [of December 22, 1980,] which called for a cooperative sale of the land in Iran to permit payment to the defendant, frustrated that sale. The plaintiff now knows that the defendant cannot return to Iran, and that she cannot take the money out of Iran and bring it to the United States. She has, however, formally offered to release all her claims to the money which could then be returned to the plaintiff's family who put up the funds." Finally, the trial court expressly rejected the plaintiff's claim that the trial court "should accept the actions of the notarial office in Iran as satisfaction of the judgment of the Connecticut court." Treating the plaintiff's argument as one involving comity, the trial court took judicial notice "of the relations now existing between the two countries" and ruled that the "granting of comity to an Iranian rule at this time would not be in the best interests of the United States."

In his appeal from the trial court's decision denying his application for relief from enforcement of the Connecticut judgment against him, the plaintiff raises a cluster of claims that all primarily involve the question

of whether the plaintiff, through the purported actions taken on his behalf in Iran to make "available" there funds for the defendant, has satisfied that Connecticut judgment.[5] On appeal, the defendant counters that "most of the issues raised by the plaintiff-appellant in his briefs are questions which were or might have been presented and determined by the court in the original trial" and the plaintiff is therefore barred from raising them in this subsequent action. The defendant further argues that, even if the plaintiff were not barred by the final judgment from raising the issues he pursues, the claims are without merit. We find no error.

---

[5] These various claims of the plaintiff include that the trial court, *Hon. Joseph W. Bogdanski,* state trial referee, erred in failing: to find the plaintiff's debt was discharged; to apply the law of "election of remedies"; to treat records as certified copies of official records of the Iranian Ministry of Justice; to find that enforcement of the modified judgment would be inequitable to the plaintiff; to find that the defendant was bound by the transactions that occurred in Iran where she initiated collection of the "mahr"; and to grant comity to Iranian law and procedure. The plaintiff also claims error in the trial court's finding of fact regarding the "removal of a lien" on the plaintiff's Iranian property and in its conclusion of law that the "language of the modification of the judgment . . . 'required' that the plaintiff sell the land in Iran." The plaintiff also asserts that the trial court did not "enter its decision upon the evidence" but rather did so "upon what appears to have been a predisposition relative to the matter in question." Because our disposition of this appeal rests on the grounds that the record adequately supports the trial court's conclusion that the modified judgment rendered by Judge Dorsey had not been satisfied by the plaintiff, we address directly in our decision only those issues that specifically relate to our holding. Regarding the plaintiff's claim in his brief of "predisposition" on the part of the trial court, we note that our review of the record indicates that this assertion is unsubstantiated and lacking in any support. See *Cameron* v. *Cameron,* 187 Conn. 163, 444 A.2d 915 (1982). The trial of this matter occurred over the course of two days, during which time plaintiff's trial counsel, who also is his appellate counsel, gave no indication that he believed that Judge Bogdanski should not decide this matter. Accordingly, we conclude this assertion is without support in fact or in law. We should also note that both counsel for the parties on this appeal also represented the parties in the dissolution action before Judge Dorsey, as well as in the action before Judge Bogdanski, from which this appeal before us was taken.

As a preliminary matter, we address first the scope of our review of this appeal. It is true that we generally review a case on the theory upon which it was tried and decided in the trial court. See, e.g., *Fuessenich* v. *DiNardo,* 195 Conn. 144, 151, 487 A.2d 514 (1985); Maltbie, Conn. App. Proc. § 42. It is equally true that we need not address other issues raised on appeal if the trial court has correctly decided *an* issue that is sufficient to sustain the judgment. See *Guglielmo* v. *Klausner Supply Co.,* 158 Conn. 308, 314, 259 A.2d 608 (1969); *Gryskiewicz* v. *Morgan,* 147 Conn. 260, 159 A.2d 163 (1960); *Silverman* v. *Swift & Co.,* 141 Conn. 450, 107 A.2d 277 (1954); Maltbie, supra, § 340 and cases cited therein; see also *Commissioner of Finance & Control* v. *Whitfield,* 35 Conn. Sup. 622, 624, 403 A.2d 709 (1978). In the present case, the trial court's determination that the plaintiff did not satisfy the terms of the modified judgment rendered by *D. Dorsey, J.,* was not in error and this holding is determinative of the plaintiff's appeal.

The construction of a judgment is a question of law for the court. See 49 C.J.S., Judgments § 436; see also *Grasso* v. *Frattolillo,* 111 Conn. 209, 212, 149 A. 838 (1930); see generally *Jordan, Marsh & Co.* v. *Patterson,* 67 Conn. 473, 479, 35 A. 521 (1896). As a general rule, judgments are to be construed in the same fashion as other written instruments. *Scoville* v. *Scoville,* 179 Conn. 277, 282, 426 A.2d 271 (1979) (*Healey, J.,* dissenting); *Grasso* v. *Frattolillo,* supra, 212; 46 Am. Jur. 2d, Judgments § 73; 49 C.J.S., Judgments, supra; 3 Stephenson, Conn. Civ. Proc. (Tait & Adomeit 1978) § 351e. " 'The determinative factor is the intention of the court as gathered from all parts of the judgment.' " *Scoville* v. *Scoville,* supra; 3 Stephenson, supra. "The interpretation of a judgment may involve the circumstances surrounding the making of the judgment.

*Christiano* v. *Christiano,* 131 Conn 589, 592, 41 A.2d 779 [1945]." *Garguilo* v. *Moore,* 156 Conn. 359, 365, 242 A.3d 716 (1968); *Nauss* v. *Pinkes,* 2 Conn. App. 400, 411, 480 A.2d 568 (1984); see also *Viglione* v. *Viglione,* 171 Conn. 213, 217, 368 A.2d 202 (1976); 46 Am. Jur. 2d, Judgments, supra; 49 C.J.S., Judgments, supra. "Effect must be given to that which is clearly implied as well as to that which is expressed." *Cooper* v. *Cooper,* 158 N.W.2d 712, 713 (Iowa 1968), quoting *Whittier* v. *Whittier,* 237 Iowa 655, 663, 23 N.W.2d 435 (1946). "The judgment should admit of a consistent construction as a whole." *Riley* v. *Liquor Control Commission,* 153 Conn. 242, 245, 215 A.2d 402 (1965).

In this action, the trial referee had reason to construe the prior judgment of the court, *D. Dorsey, J.,* that had rendered judgment on the counterclaim in favor of the defendant, who was the "plaintiff" on the counterclaim. See *Home Oil Co.* v. *Todd,* 195 Conn. 333, 341, 487 A.2d 1095 (1985). Rendered following trial, the original judgment on the marriage contract was for $15,789.47. Judge Dorsey later modified that judgment, as stated above, to the effect that the "parties shall cooperate in arranging" a sale of the plaintiff's land in Iran and that "the net proceeds of such sale, *when paid* by the plaintiff to the defendant, shall be credited against the balance of any remaining judgment debt. . . . " (Emphasis added.)

In the action tried before Judge Dorsey, the defendant's counterclaim asserted a claim in contract for damages against the plaintiff. At that trial before Judge Bogdanski, the plaintiff testified that he knew of the "proceedings" undertaken in Iran at the time of the trial before Judge Dorsey and that he had so testified at that time. It was *after* the original dissolution judgment and *after* the "when paid" modification of that judgment on December 22, 1980, that the plaintiff claimed, as he argued in his brief and alleged in his

pleadings, that "payment was made to or for the defendant, in the Spring of 1981" in Iran. His pleadings in the case before us allege that *thereafter,* in March, 1981, his Iranian attorney paid into the relevant Iranian governmental agency the debt owing to the defendant and that her Iranian attorney was so notified. His pleadings also allege that later in 1981 the defendant, acting by her Iranian attorney, "sought delay" concerning collecting the alleged payment in Iran pending the outcome of the United States action against her. The defendant maintains that since the original Connecticut judgment before Judge Dorsey, in October, 1980, she has not sought collection of any of the funds in Iran. She testified before Judge Bogdanski that, when the matter of the Iranian land came up, "I told [Judge Dorsey] that I would release the land and I will cooperate in selling the land." She also stated that she was still prepared to release the funds that are being held there and would sign any document necessary to return those funds to the plaintiff. The memorandum of decision in this case expressly recognizes that the plaintiff's claims were rejected by Judge Dorsey's judgment. The events that occurred after Judge Dorsey's modification that the plaintiff now claims constituted payment were argued to Judge Bogdanski.

In rendering the modified judgment as described above, Judge Dorsey expected the parties to "cooperate" in arranging to sell the plaintiff's land in Iran and ordered that the "net proceeds of such sale" would be credited to the judgment debt *"when paid* by the plaintiff to the defendant." (Emphasis added.) Under the circumstances, and as found implicitly by the trial court in the present action, Judge Dorsey, having heard the parties at both the trial and modification hearing, clearly contemplated that the funds from the disposition of the plantiff's property in Iran had to be paid

here to the defendant who had taken up residence in this country. Judge Bogdanski found that such payment had not been accomplished and that the plaintiff had merely taken steps in Iran to make *available* money that the defendant supposedly could claim from the governmental depository in Iran. As we stated above, the trial court concluded that the plaintiff was aware that the defendant could not realistically return to Iran and that, even if she could have returned, the money could not be removed from Iran.[6] Because the plaintiff had not taken steps to ensure payment in this country of the judgment debt, the trial court concluded, inter alia,

---

[6] The defendant testifed at trial that her father, who had "some official capacity in Iran under the regime of the Shah," was no longer alive. Neither the plaintiff nor the defendant have returned to Iran since the change of government there in 1979.

After taking judicial notice "of the relations now existing" between the United States and Iran, the trial court ruled that comity would not be given to an "Iranian rule" in this matter. Relying on *Fletcher* v. *Peck,* 10 U.S. (6 Cranch.) 87, 3 L. Ed. 162 (1810), for the proposition that state courts are bound by federal law, including treaties, the plaintiff argues that the granting of comity is not discretionary in the face of an existing federal treaty between the two concerned nations. The defendant, however, asserts the vitality of *Hilton* v. *Guyot,* 159 U.S. 113, 16 S. Ct. 139, 40 L. Ed. 95 (1895), in arguing for the proposition that the principle of comity is a matter of discretion and is based "fundamentally on the concept of reciprocity." While we are aware that the purported demise of the federal common law in *Erie R. Co.* v. *Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), and the refusal of some state courts to follow the reciprocity rule of *Hilton;* see, e.g., *Johnston* v. *Compagnie Generale Transatlantique,* 242 N.Y. 381, 152 N.E. 121 (1926); may have curtailed the vitality of *Hilton* v. *Guyot,* supra; see 2 Beale, Conflict of Laws (1935) § 434.2; Restatement, Foreign Relations Law of the United States (Revised) § 491, comment a and Reporters' Notes 1 (tent. draft no. 4 1983); Peterson, "Foreign Country Judgments and the Second Restatement of Conflict of Laws," 72 Colum. L. Rev. 220, 223–24, 233–38 (1972); von Mehren & Trautman, "Recognition of Foreign Adjudications: A Survey and A Suggested Approach," 81 Harv. L. Rev. 1601, 1607 (1968); we need not address this issue because of the basis of our disposition of this appeal. We have previously recognized the flexibility of the comity doctrine with its underlying concern for fairness to the parties; *Hao Thi Popp* v. *Lucas,* 182 Conn. 545, 550, 438 A.2d 755 (1980); and we at least have acknowledged the reciprocity principle. *Presutti* v. *Presutti,* 181 Conn. 622, 629, 436 A.2d 299 (1980).

that the Connecticut judgment had not been satisfied and denied the plaintiff's request for equitable relief. "The satisfaction of a judgment refers to compliance with or fulfillment of the mandate thereof." 47 Am. Jur. 2d, Judgments § 979. There is realistically no substantial difference between the words "paid" and "satisfied" in the judgment context. See *Ex parte Krouse*, 148 Cal. 232, 233, 82 P. 1043 (1905). We hold that this conclusion, supported by the record and the facts found in the trial court's memorandum of decision, is not clearly erroneous. Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

If the plaintiff, prior to initiating this action, had any doubt regarding the terms of the modified judgment, he could have requested articulation by the trial court. See *Fuessenich* v. *DiNardo*, 195 Conn. 144, 157, 487 A.2d 514 (1985). This the plaintiff did not do. If the plaintiff was dissatisfied with either the original or the modified judgment, he could have then directly appealed in each instance, which he also did not do. The general rule is that a party may not attack collaterally in a postjudgment action a judgment from which he or she has not taken an appeal.[7] *Glemboski* v. *Glemboski*,

[7] We need not rest our resolution of this matter on the defendant's contentions that the present action is an impermissible collateral attack on a valid final judgment; see, e.g., *Meinket* v. *Levinson*, 193 Conn. 110, 474 A.2d 454 (1984); *Glemboski* v. *Glemboski*, 184 Conn. 602, 440 A.2d 242 (1981); and is barred by the doctrines of former adjudication; see, e.g., *In re Juvenile Appeal (83-DE)*, 190 Conn. 310, 460 A.2d 1277 (1983); *Lehrman* v. *Prague*, 115 Conn. 484, 162 A. 15 (1932); although the trial court implied that such contentions had merit. See *Hubbard* v. *Manning*, Kirby 256 (1787) (matters that could have been pleaded in the original action cannot be pleaded to a scire facias).

The plaintiff suggests that "[i]t is possible to construe the complaint . . . [in this action] as a common law writ of audita querela" and that the suit was therefore properly brought. The plaintiff's "complaint," however, seeks relief in the form of a declaratory judgment, a permanent injunction, and "such other relief as in equity may appertain." The ancient writ of audita is, as the plaintiff states, one of legal rather than equitable origin. See *Russell*

184 Conn. 602, 606, 440 A.2d 242 (1981); *Nikitiuk* v. *Pishtey,* 153 Conn. 545, 219 A.2d 225 (1966); *Milestan* v. *Tisi,* 140 Conn. 464, 472–73, 101 A.2d 504 (1953); see *Jenkins* v. *Bishop Apartments, Inc.,* 144 Conn. 389, 132 A.2d 573 (1957); see also *Pearce* v. *Olney,* 20 Conn. 543 (1850). The plaintiff's postjudgment claim of payment necessarily had to fail unless the plaintiff complied with the terms of the modified judgment, a judgment from which he elected not to appeal.

Because our disposition is determinative of this entire appeal, we need not address the various other claims raised by the plaintiff.

There is no error.

In this opinion the other judges concurred.

*Lumber Co.* v. *Smith & Co.,* 82 Conn. 517, 74 A. 949 (1909); 7 Am. Jur. 2d, Audita Querela § 1. Because the plaintiff did not distinctly raise this claim in the trial court below, we need not address here the vitality of that writ in this case. Practice Book § 3063; see *State* v. *Wojculewicz,* 143 Conn. 118, 120, 119 A.2d 913 (1956); 7 Am. Jur. 2d, supra, § 2. See generally *Burchett* v. *Roncari,* 181 Conn. 125, 127, 434 A.2d 941 (1980); 2 Stephenson, Conn. Civ. Proc. (2d Ed. 1971) § 209.