[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Docket No. CV89-102492S is an action by Robert Testa to foreclose his mechanic's lien filed against the defendants Raymond LeDuc, William Tarala and Hilltop Realty, Inc., for services, labor and materials supplied by plaintiff and incorporated into the Eastview Condominium Project located on the corner of Bedford Avenue and Prospect Street in Norwalk.
Docket No. CV93-0134002S is an action by Robert Testa claiming a breach of contract by the defendants named above in wrongfully terminating the plaintiff as "Contractor" in an Agreement dated as of September 30, 1987 relating to the development of the Eastview Condominium Project. ("The Agreement").
The plaintiffs' motion to consolidate was granted by Mottolese, J., on November 29, 1993.
After approximately fourteen trial days with an enormous number of exhibits introduced into evidence, the court finds that the defendants, Raymond LeDuc and William Tarala, wrongfully terminated the plaintiff; Robert Testa.
The defendants, William Tarala and Raymond LeDuc, as "Owners" and Robert Testa as "Contractor" entered into a September 30, 1987 written Agreement. All parties were represented by the same attorney, now deceased.
The contract is not a model of clarity or precision. It states that the owners have received approval to construct a CT Page 9971 twenty-six (26) unit condominium project. The Agreement goes on to state the owner's desire to hire the contractor to construct the units in accordance with certain plans attached. At the time of execution there were no plans attached. The Agreement further provides that the contractor will be paid a fee of $10,000.00 per month up to a maximum of $260,000.00. There was no express completion date contained in the Agreement. There were provisions for profit sharing which, due to subsequent events, become irrelevant.
At the time of the signing of the Agreement, the Owners were the title holders to the subject property which was to be developed as a twenty-six unit condominium. On October 27, 1987, Raymond LeDuc and William Tarala conveyed the subject property to Hill Top Realty, Inc., stating a consideration of $1,700,000.00. Also, on October 27, 1987, Hill Top Realty, Inc. granted a mortgage to Raymond LeDuc and William Tarala, subject, inter-alia, to a first mortgage, dated, October 27, 1987 to Norwalk Savings Society. The note secured by the $1,700,000.00 mortgage was signed by William Tarala, President Hill Top, Inc. The construction Mortgage from Hill Top to Norwalk Savings Society was in the amount of $2,500,000.00. The note secured by the $2,500,000.00 construction mortgage was signed by William Tarala, President, Hill Top Realty, Inc. and Raymond LeDuc, and William Tarala individually.
The initial advance under the construction mortgage loan was made on October 27, 1987 by a deposit of $1,050,000.00 into Hill Top's account at Norwalk Savings Society. One million of the initial advance must have represented a reimbursement to LeDuc and Tarala for the land costs as provided in Paragraph 2 of the September 30, 1987 Agreement. The defendants claim that they were not reimbursed for the cost of the land. The balance of the land cost, $700,000.00 was to be paid to LeDuc and Tarala from the proceeds of each individual unit closing in an amount not to exceed $33,500.00, unless otherwise agreed to by the parties to the Agreement.
The original estimate for the construction costs of the twenty-six units, exclusive of land cost, was $2,497,250.00.
After approximately fourteen days of trial, with hundreds of plaintiffs' exhibits and defendants' exhibits, and conflicting testimony, this court has absolutely no idea how the project was apparently completed at a construction cost of $2,374,000.00, a CT Page 9972 figure less then the original estimate.
This case and the basis for the decision come down to one issue; whom do you believe? The credibility of Mr. Tarala does not need to be considered in the determination of credibility. He must have been on the planet Mars during the period between the signing of the Agreement on September 30, 1987 and the termination of Mr. Testa in November of 1988. Albeit, he was a very polite witness. His answers were "I don't know or I don't recall." Mr. Tarala was the president of Hill Top Realty Inc. He was also the electrical contractor working on the project. He testified that he had nothing to do with the books and records of the corporation and that Mr. LeDuc handled everything. The question then, of credibility, lies between Mr. Testa and Mr. LeDuc. The court finds Mr. Testa to be the more credible witness.
A review of the evidence shows that Mr. Testa prepared and submitted detailed invoices for payment to Hill Top Realty, Inc. The initial invoice, dated December 21, 1987 in the amount of $69,480.02 was the only invoice paid in full. All other invoices were paid by partial payments or not paid. Robert Testa testified that Raymond LeDuc paid less then requested because LeDuc said there was not enough money available. Raymond LeDuc testified that he paid less then invoiced because that was all Robert Testa said he needed.
The construction mortgage documents contemplated a two year construction period with project completion on or before October 27, 1989. The September 30, 1987 Agreement called for payments of $10,000.00 per month to Robert Testa, up to a maximum of $260,000.00. Thus, the Agreement could be interpreted to have set a twenty-six month construction schedule.
Robert Testa obtained a foundation permit for "a ten unit multi-family residence" on December 22, 1987. The plans and specifications were not finalized by the defendants' project architect until January 26, 1988.
The defendants, LeDuc and Tarala, wanted the plaintiff to have models ready by early July, 1988. The Agreement had no provision for delivery of a model or models by July, 1988. Units were used as models by September, 1988.
By letter dated October 11, 1988 to Mr. Stanley Whittemore, Norwalk Code Enforcement Officer, the defendants' architect CT Page 9973 certified that Buildings A B had been completed in accordance with construction documents and code requirements.
The defendants never orally or in writing advised plaintiff that they were not satisfied with his work at the project.
In October, 1988, LeDuc and Tarala began to voice displeasure for the first time. In early November, at a meeting in the attorney's office, the court finds that the defendants wrongfully terminated the plaintiff, violating their Agreement.
Work on the project ceased on or about November 10, 1988. On November 30, 1988, William Tarala sent a letter to Dave Johnson at the Norwalk Building Department stating "As you know, the undersigned has terminated Bob Testa's employment in the construction of our condominium at Eastview."
Mr. Testa was replaced by Alden Halle. His first day on the job, as Superintendent of Eastview Condominium, was November 30, 1988.
Mr. Halle, because of illness, did not testify at trial. His deposition, which was introduced at trial, was taken over three days on December 22, 27, and 28, 1989. The court read the three days of testimony.
Mr. Halle testified that most of the subcontractors were not paid what they were owed, as of November 30, 1997. On November 30, 1988, however, four or five units at Eastview were occupied.
Mr. Halle testified that "I ironed out the money situation." He told the subcontractors that if they came back to finish the job they would be paid. Two or three subcontractors did not return due to non-payment. The vast majority did return and the vast majority completed the project for their original contract amount.
It would appear that Mr. LeDuc, who handled the finances for the project, began paying the subcontractors after Mr. Halle enticed them to return to complete the project.
There were countless photographs taken by Mr. Halle to show what he described in some instances as defective work, and in some instances, work that was improperly done. The vast majority of these defective or improperly performed works were cured by CT Page 9974 the subcontractors, under the terms of the original contracts.
The major problems, the sagging floor and the grading were, in the court's opinion, attributable to the unreasonable project time schedule set by the defendants, as well as the lack of timely payments to the subcontractors.
There was also some testimony that on site discovery of ledge may have caused grade calculations to be changed to avoid expensive blasting at the site. There was some testimony also, that the sagging floor could very well have been caused by a design defect by the architect or defective material from the supplier.
"As a general rule, contract damages are awarded to place the injured party in the same position as he would have been in, had the contract been fully performed (citations omitted). We recognize that there is no unbending rule as to the evidence by which such compensation is to be determined." Fuessenich v.DiNardo, 195 Conn. 144, 153.
The court, based on the above findings, rules that the defendants wrongfully terminated the plaintiff. The plaintiff is entitled to a total payment of $180,000.00, less any sum previously paid, for his contractor supervision fee, together with interest at the rate of 10% per annum. The plaintiff testified that he felt the project could be completed in eighteen months. The Agreement provides (paragraph 4) that the $10,000.00 will be suspended if there is no substantial progress for any other reason.
A hearing must be scheduled to clarify the following:
The court cannot with accuracy determine what amount has previously been paid to plaintiff. Plaintiff's brief shows that $74,032.74 has been paid to plaintiff and refers to Exhibit DDDD. Nor can the court determine the additional bills paid by plaintiff after termination. The plaintiff claims that the amount is $43,068.05. Once the amount of the judgment is determined the court will fix the date for interest to commence.
The subsequent hearing will also include evidence as what may be owed to W. G. Glenney Co. and John D'Antonia.
My present assignment mandates that this hearing must be held CT Page 9975 on a Monday. If the attorneys involved can provide Stamford Civil Caseflow with three mutually acceptable dates, I will promptly schedule the hearing.
RICHARD J. TOBIN, J.